### PETE TRO v. STATE.

No. A-4477.      Opinion Filed Sept. 2, 1924.
(228 Pac. 530.)

(Syllabus.)

**Evidence—Intoxicating Liquors—Sufficiency of Circumstantial Evidence—Conviction for Unlawful Manufacture of Liquors not Sustained.** Where circumstantial evidence alone is relied upon, the circumstances must be such as to preclude every reasonable hypothesis other than that of the guilt of the defendant of the offense charged to sustain the conviction. For evidence held insufficient to sustain a conviction for manufacturing beer and whisky, see body of opinion.

Appeal from County Court, Roger Mills County; E. E. Tracy, Judge.

Pete Tro was convicted of the unlawful manufacture of intoxicating liquor, and he appeals. Reversed.

W. H. Mouser, for plaintiff in error.

George F. Short, Atty. Gen., and J. Roy Orr, Asst. Atty. Gen., for the State.

PER CURIAM. This is an appeal from the county court of Roger Mills county, wherein, on the 22d day of August, 1922, plaintiff in error, Pete Tro, was convicted of the crime of unlawful manufacture of intoxicating liquors, and his punishment fixed at a fine of $400 and imprisonment in the county jail for 30 days.

The information charged that the defendant manufactured intoxicating liquor, to wit, beer and whisky and other intoxicating liquors; the exact amount being unknown to the county attorney.

The evidence is substantially as follows: R. E. Brown testified that he was the sheriff of Roger Mills county on the 8th day of February, 1922; that he searched Pete Tro's place, which is located in said county; that a deputy sheriff was with him; that there were two houses on the place, one of them a part dugout; that he saw the defendant at the house, and told him he was there to search it, and the defendant said, "All right"; that the dugout was about 10 feet from the house; that witness went into the house to search, and when he came out of the house defendant was coming out of the dugout carrying a sack; that defendant ran off a piece with the sack and ripped the sack open; that witness got the sack and gathered up some of the stuff that had been poured out of it and then went into the dugout, where he found an old beer keg and some liquid on the floor of the dugout, which witness said he thought was choc beer. Further the witness testified as follows (quoting from the record):

"Q. You are prepared to tell this jury that that was choc beer? A. I am not sure, but that was what some claim it to be, but I'm not up on to those things very well.

"Q. In regard to that sack, was it wet at that time? A. Yes.

"Q. And the mash was also wet? A. Yes.

"Q. Now Mr. Brown, tell the jury the procedure of making intoxicating liquor. A. I couldn't do it.

"Q. Well, state to the jury what is the purpose of the mash? A. I don't know that.

"Q. In your experience in raiding distills you usually find mash? A. Yes, I usually do.

"Q. And the mash is usually put in barrels? A. Usually in barrels.

"Q. And by use of mash the intoxicating liquor is made is it not?

"By Mr. Mouser: Objected to as leading questions.

"By the Court: Sustained; that form of questions are leading.

"Q. Tell the jury how they make choc beer. A. I never made any.

"Q. The experience you have had.

"By Mr. Mouser: He said he didn't know.

"By the Court: State what you know. A. They use different things, some corn and rye and wheat bran, but most of them use sugar and yeast cake.

"Q. And also this mash? A. Yes, I understand this grain is what they call mash.

"Q. And that was what you found in the sack? A. Yes, sir.

"Q. Where did you find the choc beer? A. Out on the floor.

"Q. I will get you to state whether or not it had the appearance of being recently tipped over? A. Yes, sir.

"Q. Did Mr. Tro say he tipped it over? A. No.

"Q. What kind of floor in the dugout? A. I don't remember.

"Q. And what would you say about how large a keg that was? A. I think a ten-gallon beer keg.

"Q. And did Mr. Tro live in Roger Mills county? A. Yes, at that time.

"Q. And state of Oklahoma? A. Yes."

On cross-examination the witness testified that he did not drink any of the liquid; didn't know the amount thereof, could not swear that it was whisky; that it was choc beer, but did not drink it, and was not prepared to tell the jury that it was intoxicating; that in addition to the defendant Jimmie Dennard and Charlie Lozer were present; that he thought it was wheat that defendant had in the sack, but they did not find any distillery nor sugar.

Bud Copeland testified that he was deputy sheriff and was with the sheriff when the search was made of defendant's premises on the 8th day of February, 1922; that he was in the dugout or cellar on the premises, and a keg of beer was tipped over by the defendant; that defendant hollered to Dennard to "break that whisky"; that Dennard broke some whisky; that the beer was choc beer and intoxicating. On cross-examination this witness testified in part as follows:

"Q. Did it smell like that stuff that they exhibited here a while ago? A. No, sir.

"Q. Like that that Mr. Tro spilled on the floor? A. Yes, sir.

"Q. Was it intoxicating? A. If that is beer, it is.

"Q. You can swear that any of this was intoxicating? A. I don't know that it was.

"Q. You don't know it was? A. It smelled like beer.

"Q. You also smelled some whisky? A. Yes.

"Q. Where was it? A. Over next to the window.

"Q. What was it in? A. A fruit jar. This keg was on the south side of the dugout, and the whisky on the north side.

"Q. How do you know it was whisky? A. I don't know, only I smelled of it.

"Q. Who broke it? A. Mr. Dennard.

"Q. You know nothing about how much was in there? A. About one-half full.

"Q. A cement floor in this dugout? A. Yes; it seemed to me like this was; seemed a hard dirt floor or cement, I wouldn't say positively."

W. W. Peterson testified that he was the county attorney of Roger Mills county, and had some experience in assisting the sheriff in making raids on stills, and it was his experience in raiding of the stills and being with the officers, etc.; that in making of whisky the first that is done is to make the mash and put it to soak with different things, sugar and yeast, and after it got to a certain stage of fermentation it becomes choc beer, and the witness stated that he had drank considerable choc beer since he had been in the county attorney's office, and from his observation that he knew it was intoxicating; and that after the mash has been put to soak and becomes choc beer it is ready to be run off by the still to make whisky. On cross-examination the witness testified that he was not prepared to swear that this particular stuff was intoxicating; that he did not drink any of it; but that he was only testifying to the process of making whisky.

The foregoing was all the evidence in the case. The court instructed the jury that under the charge the defendant could be either found guilty of manufacturing intoxicating liquor or of an attempt to manufacture the same or not guilty. The jury returned a verdict finding defendant guilty of manufacturing intoxicating liquor as charged in the information, and assessed his punishment at imprisonment in the county jail for 30 days, and that he be fined $400. It is strenuously contended that the evidence is wholly insufficient in law to sustain a conviction of manufacturing intoxicating liquor. This court is impelled to agree with this contention.

If the evidence in this case is sufficient to sustain a conviction for manufacturing beer and whisky, then any person who may have the possession of a small amount of whisky at his home, a sack of moist wheat, and a beer keg full of some kind of slop which smells like mash, without the possession of any of the utensils, such as a still and worm, out of which whisky is made, may be convicted of such offense.

The circumstantial evidence in this case, if it proves anything, proves that the defendant was possessed of a small amount of whisky in a fruit jar on his premises. The defendant was not charged with the unlawful possession of intoxicating liquor, and we surmise that such a charge was not placed against him because the quantity found was not sufficient to be presumptive evidence of an intent on his part to violate any of the provisions of the prohibitory liquor laws of this state. It appears evident that because of such fact the prosecuting attorney preferred to charge defendant with the unlawful manufacture of intoxicating liquor rather than to charge him with the unlawful possession thereof, because under the charge of manufacturing it was not necessary

to prove the intent to sell, barter, or give away the same. Ofttimes the evidence will justify the filing of one or more charges of violating the prohibitory liquor laws, and the county attorneys have a large discretion as to which of such offenses they will prosecute for, but the burden rests upon the state to prove the defendant guilty beyond a reasonable doubt of the offense charged, and, where circumstantial evidence alone is relied upon, the circumstances must be such as to preclude every reasonable hypothesis other than that of the guilt of the defendant of the offense charged. The circumstances here relied upon do not meet this requirement; they fall far short thereof.

For such reason, the judgment of conviction is reversed.