JIM GOODMAN et al. v. STATE.

No. A-5964.   Opinion Filed Jan. 28, 1928.
(263 Pac. 471.)

J. F. Boettcher and J. T. Michael, for plaintiffs in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiffs in error Jim Goodman, James Cole, C. J. Sprague, and M. C. Williams, hereinafter called the defendants, were charged in the county court of Cleveland county with the crime of "manufacturing intoxicating liquor, to wit, 8 gallons of whisky, by the use of a still, still worm, and mash, containing more than one-half of 1 per cent. of alcohol measured by volume, and capable of being used as a beverage."

A trial was had and the defendants convicted and each of them sentenced to imprisonment in the county jail of Cleveland county for a period of 90 days and to pay a fine of $250 and cost.   Motion for a new trial was filed and overruled and exceptions saved.   From the judgment and sentence, the defendants appealed to this court.

The testimony on behalf of the state as disclosed by the record is, in substance, as follows:

W. W. Jennings, a witness for the state, testified that he was the undersheriff of the county prior to the date he was called as a witness; he had been deputy

sheriff; that he had lived in the county all his life; he knew the defendant Jim Goodman and he saw the co-defendants Cole, Sprague, and Williams, on August 22, 1925, at Jim Goodman's house; that Frank Boggs, the sheriff, and I. B. Sale, the deputy sheriff, were with him at the time; that he made the affidavit for the search warrant. "The defendants and the Goodman family were at the Goodman house when we got there; we found, at the house, a wagon, a 5-gallon jug with some drugs in the bottom of it that smelled like whisky, a lantern that was smoked, and one quart of whisky which Mr. Sprague had poured out before we got to the wagon. I went into the house, and Mr. Goodman had broke a half pint of whisky, and it was running in the floor. I did not find anything else at the house. We looked to see which way the wagon tracks had come from; they went over towards an adjoining farm, understood to belong to Edna Butler, which was about three-fourths to a mile from the defendant Jim Goodman's house; we went over to the adjoining farm and found a still, barrel of mash, and some whisky; we destroyed the barrels and whisky and took the still into town."

Frank Boggs and I. B. Sale, in substance, testified to the same facts, contending there had been some whisky at the wagon, and some had been poured out at the house, and all agree that on the Jim Goodman place there was cultivated land and patches of different kinds of crops on the farm; there was a dividing line between Jim Goodman and Edna Butler's place, where it was claimed the whisky, barrels of mash, and still were found.

Jim Goodman testified that he did not pour out any whisky; that the bottle the sheriff and his deputies found was a water bottle; that the only thing that had been in the fruit jars in and around the place was cider

that he had made from apples which he had gathered from his orchard on the place. In this he was corroborated by some of the other defendants.

Goodman admitted that he had driven his wagon back and forth through the farm; that he had been down and fixed the fence on the road between his place and the Butler place, or the half section or section line. He denied any knowledge of there being whisky, barrels of mash, or a still for manufacturing whisky on the Butler place; had no ownership in it nor did he know, and positively stated that he had nothing to do with the manufacturing of whisky. The other defendants, in substance, stated the same facts; that neither of them had poured out any whisky; and that the fruit jar mentioned by the state witnesses at the wagon only contained apple cider. All of the testimony shows that the still, barrels of mash, and whisky that were alleged to have been found on the Butler place was from three-fourths to a mile from the home of the defendant. There is not a word of testimony connecting the defendants, or either of them, with manufacturing the whisky, excepting a mere suspicion from the fact that on the defendant's farm and going back and forth towards the farm on which it was alleged the still, whisky, and mash was found, were wagon tracks over the farm of the defendant Jim Goodman.

The defendants have assigned several errors alleged to have been committed by the trial court, but the only errors we deem it necessary to consider are assignments 4 and 5, which are as follows:

"(4) The verdict of the jury is clearly contrary to the law and the facts.

"(5) That the court erred in not sustaining defendants' demurrer to the evidence of the state at the close of defendants' case."

These two errors may be considered together, as they both raise the same question. that is, the sufficiency of the evidence to sustain a conviction against the defendants upon a charge of manufacturing whisky. Neither of the defendants is charged with having possession of whisky, or with the bartering or selling, but only charged with the crime of manufacturing whisky.

After a careful consideration of all the testimony in the case it is apparent that the evidence is not sufficient to sustain a verdict. The evidence tends to show that intoxicating liquor had been manufactured on the Butler place about three-quarters or a mile from the home of one of the defendants, Jim Goodman, but the testimony is not sufficient to show that these defendants had any knowledge of the same.

In the case of Tro v. State, 27 Okla. Cr. 418, 228 P. 530, this court reviewed this case, in which the evidence introduced was circumstantial and very much stronger than the present case, in which the court said:

"If the evidence in this case is sufficient to sustain a conviction for manufacturing beer and whisky, then any person who may have the possession of a small amount of whisky at his home, a sack of moist wheat, and a beer keg full of some kind of slop that smells like mash, without the possession of any of the utensils, such as a still and worm, out of which whisky is made, may be convicted of such offense.

"The circumstantial evidence in this case, if it proves anything, proves that the defendant was possessed of a small amount of whisky in a fruit jar on his premises. The defendant was. not charged with the unlawful possession of intoxicating liquor, and we surmise that such a charge was not placed against him because the quantity found was not sufficient to be presumptive evidence of an intent on his part to violate any of the provisions of the prohibitory liquor laws of this state. It appears evident that because of such fact

the prosecuting attorney preferred to charge defendant with the unlawful manufacture of intoxicating liquor rather than to charge him with the unlawful possession thereof, because under the charge of manufacturing it was not necessary to prove the intent to sell, barter, or give away the same.

"Ofttimes the evidence will justify the filing of one or more charges of violating the prohibitory liquor laws, and the county attorneys have a large discretion as to which of such offenses they will prosecute for, but the burden rests upon the state to prove the defendant guilty beyond a reasonable doubt of the offense charged, and, where circumstantial evidence alone is relied upon, the circumstances must be such as to preclude every reasonable hypothesis other than that of the guilt of the defendant of the offense charged. The circumstances here relied upon do not meet this requirement; they fall far short thereof." Dowdy v. State, 27 Okla. Cr. 402, 228 P. 528.

In La Grone v. State, 32 Okla. Cr. 45, 239 P. 938, the court says:

"Where the sufficiency of the evidence to sustain a verdict is questioned on appeal, the evidence must be such that the jury may reasonably and logically find the guilt of the defendant, and, where it raises no more than a suspicion of guilt, it is insufficient."

In Peard v. State, 32 Okla. Cr. 45, 240 P. 158, the sheriff and four others found two barrels of mash buried in a shed, broken jars, two cream cans, and a couple of jugs in the cellar of the house; these articles were introduced as evidence, over the objection of defendant. Held insufficient to sustain the offense charged, that of manufacturing intoxicating liquor.

In Wofford v. State, 32 Okla. Cr. 25, 239 P. 938, the court said:

"To find a verdict of guilty the jury were required to find that the facts and circumstances in evidence were sufficient to show beyond a reasonable doubt the defendant's guilt. It is not sufficient that he may have

committed the act, but it must be established that he did."

This question has been before this court so often that we do not deem it necessary to further discuss the question. This court has repeatedly held that it will not disturb the verdict of a jury where there was any competent evidence to support the finding of the jury, even though the evidence is conflicting. Where the evidence is purely circumstantial, as in this case, the facts proved must be such as to preclude every reasonable hypothesis other than the guilt of the defendant charged in order to sustain a conviction. There is not sufficient evidence in this case to connect either of the defendants with the manufacturing of intoxicating liquors. Where the state fails to offer any material evidence tending to prove the offense charged, or where the evidence tends to prove anything pertinent to the issue, there is a question of law for the court, and where there is an entire absence of evidence tending to identify the accused with the offense charged in the information the court should direct a verdict of acquittal. It may be that the defendants committed the offense charged, but, if so, the state has failed to prove it. The demurrer of the defendants to the evidence of the plaintiff was well taken and should have been sustained.

For the errors hereinabove stated, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.