ANGLIN v. STATE.

No. A-11232.   Nov. 8, 1950.

(224 P. 2d 272.)

Lloyd C. Colter, Nowata, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.  The plaintiff in error, Elvin Anglin, hereinafter referred to as defendant, was charged by information filed in the district court of Nowata county with the crime of assault with a dangerous weapon, a felony, Tit. 21 O.S.A. § 645, was tried before a jury, but convicted of the included charge of assault, a misdemeanor, 21 O.S.A. § 645, and his punishment was fixed by the jury at a fine of $100.  Defendant had been charged jointly with his father, R. N. Anglin, but on motion of the parties, a severance had been granted.

The information had charged that R. N. Anglin and Elvin Anglin had committed an

"assault upon the person of Charles Claypool, with certain dangerous weapons, to-wit: a spade or sharpshooter, about three feet long, and a wooden club, about three feet long and about three inches in diameter, which they, the said R. N. Anglin and Elvin Anglin had and held in their hands, and acting together and in concert with each other, did then and there strike, beat, wound, injure and batter him, the said Charles Claypool, and did then and there threaten to kill him, the said Charles Claypool, with said dangerous weapons, with the unlawful, illegal and wrongful and felonious intent on the part of the said defendants then and there to do bodily harm and injury to him, the said Charles Claypool, contrary to the form of the statute and against the peace and dignity of the State."

Counsel for defendant urges three grounds for reversal, which will be considered in order as argued in brief.

It is contended that the trial court erred in overruling defendant's demurrer to the evidence, the theory being that the state failed to prove that Elvin Anglin was in any way concerned or implicated in the commission of the crime charged in the information. In support of this argument certain statements made on cross-examination by the complaining witness, Charles Claypool, are set out, the gist of such statements being that the defendant never struck witness, or told defendant's father, R. N. Anglin, to strike him, nor did defendant do anything but curse witness. It is urged that the evidence of all the other witnesses was to the same effect.

Counsel argues that the evidence only indicated mutual assent, and that is not aiding, and that "for a man to be an accomplice, he must take some affirmative or overt action", citing Anderson v. State, 66 Okla. Cr. 291, 91 P. 2d 794. In that case this court said:

"Section 1808, Okla. Stats. 1931, Okla. Stats. Ann. Title 21, section 172, provides: 'All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.' Under the above statute, to be concerned in the commission of crime as a principal, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. A mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime."

In the above case, many prior cases involving the construction of the cited statute under which this case was prosecuted, defining "aiding and abetting" are cited.

It will be necessary to study the fact situation in numbers of the cited cases to properly appreciate the construction placed on this statute by this court. Of interest is the quoted definition from 14 Am. Jur. p. 826, sec. 87, stating the rule as follows:

"To constitute a person a principal in a crime he must be present aiding by acts, words, or gestures and consenting to the commission of the crime. It is not necessary, however, that he do some act at the time in order to constitute him a principal, but he must encourage its commission by acts or gestures, either before or at the time of the commission of the offense, with full knowledge of the intent of the persons who commit the offense. The mere concurrence of the minds of persons in pursuance of a previously formed design to commit a crime does not alone constitute them principals. To constitute a principal in crime, there must be participancy or the doing of some act at the time of the commission of the crime which is in furtherance of the common design."

We have carefully studied all the testimony to determine whether or not the evidence of the state was sufficient if believed by the jury to, under the law as set forth in the Anderson case above, support the charge.

The evidence shows that the complaining witness, Charles Claypool, on July 7, 1948, accompanied by his wife, drove in a 1937 one-half ton Ford pickup into the town of Wann and stopped his car in front of McFarlane's store, and Mrs. Claypool entered to get some groceries; and that Mr. Claypool sat in the pickup with the left door open and his left foot was resting on the running board. Immediately Elvin Anglin and his father drove up and stopped close to the Claypool car and R. N. Anglin got out and walked to the side of the pickup and spoke to Claypool and then began calling him vile names and Claypool attempted to push him back with a hand, and

R. N. Anglin reached into the back of Claypool's pickup and got a sharp pointed shovel and began to hit Claypool on the leg and Claypool attempted to get away through the right door of the pickup, and the elder Anglin began punching him with the shovel, then when Claypool got out on the opposite side of the pickup, Anglin threw the shovel back in the pickup, got a sledge hammer out of the back and came around toward the front with it and Claypool first got behind his open car door, and then got out and walked around the front of his pickup to the opposite side of his car and there saw the defendant, Elvin Anglin, leaning against the front fender of the Anglin car about six or seven feet distant and he had a freshly sawed stick about three feet long in his hands, and witness stated:

"He commenced cussing me. He called me every kind of a son-of-a-bitch and bastard he could think of. Telling me how big a coward I was and how he could whip me."

Witness further testified that about that time his wife came out of the store. Witness was asked "What did she say, if anything", and he answered: "I think she hollered out to them to stop. I think first she said, 'Two mighty brave men. Two to one. Both with clubs.' Elvin turned around and looked at her and said, 'Yeah, this is for you too if you come on out here.' Q. Then where did Mrs. Claypool go after that statement? A. I think she just stood there." Witness further testified as to what next happened, as follows: "Well, after that Elvin also said: 'We never did come to town to start a fight' but said, 'this is one time we did.' After he threatened my wife—said if she come out that club was for her—I told her to get her groceries and come on and we would go on home." Witness stated that his wife got her groceries

and they got in the pickup and started driving away and R. N. Anglin threw the sledge hammer in the back of the truck of witness and that Elvin was standing holding his club.

Mrs. Claypool testified that when she saw R. N. Anglin punching her husband with the shovel that she ran out and hollered; and asked if she said anything, stated:

"Well, when they were both a standing one on each side of him with a club, I said, "Two brave men, I must say.' " ' She stated that defendant and his father were both cursing her husband, and that defendant had raised his club and said to her, "This one is for you," and "He did say something during that time he never did come to town to start a fight but that was one time that they had."

A. P. Jackson, witness for the state, was asked:

"Did you see him [Elvin] come out of the car after they drove up behind the Claypool car and stopped? A. I seen the door open and seen him come out. Q. Did he have a club in his hand at that time? A. I couldn't swear where he got the club. When he walked around in front of the car where I could see clearly he had it in his hand, yes, sir. Q. Immediately after he got out of the car? A. Yes, sir." Witness had further stated: "From the house it looked like a pick or mattock handle. Something of that kind, you know. It was a good heavy stick of some sort."

He further testified that after Claypool and wife drove away Elvin walked by the right side of his car and put the club through the window into his car, got in the car and his father got in on the right side and they backed the car up and drove away in a few minutes.

The evidence further disclosed that the Anglins were abusing and berating Claypool concerning a school fight

and some court hearing that had been had a day or so before. We conclude that there was sufficient evidence, if believed by the jury, to constitute "aiding and abetting" on the part of the defendant, if he in fact drove his father up near the Claypool car, got out with a club and stood near while his father beat the witness with a shovel, and threatened the wife of witness if she interfered, and abused the prosecuting witness and threatened him and advised him that they had come to town to start this fight. It is true that the defendant, when he took the witness stand in rebuttal, denied most of the state's evidence except having the club and cursing Claypool, but it was for the jury to decide all issues of fact.

Defendant's second specification of error is that "The court erred in admitting prejudicial evidence on the part of the state, which was incompetent as evidence." The court admitted in evidence a photograph showing the bruise on the leg of the complaining witness, alleged to have been caused by the lick of the shovel wielded by R. N. Anglin. Counsel for defendant had objected to the introduction of the photograph on the ground that it had not been properly identified and that no proper foundation was laid for its introduction.

The complaining witness, Claypool, testified that R. N. Anglin had hit him four times with a shovel; that the striking took place on Wednesday and that the picture was made on Saturday following. The defendant did not deny the striking by the father, who did not testify. The location of the bruise was not material. The defense was that Elvin Anglin did not aid nor abet the striking of Claypool by R. N. Anglin, nor strike or threaten to strike the complaining witness, and took no part in the altercation between his father and Claypool.

The record indicates that the photograph in question was not properly identified, as contended by counsel for defendant, but from a study of the record and even the photograph itself, which indicated only a very slight and superficial bruise, and by reason of what we have said, we conclude that the rights of the defendant were not materially affected by the introduction of the photograph without having been first properly identified by the person who took it.

This court has many times held that the admission or exclusion of testimony which, in the light of subsequent developments during the trial, indicates conclusively that no injury could have resulted, is not ground for reversal of a judgment. Rogers v. State, 9 Okla. Cr. 277, 131 P. 941; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149; Rickman v. State, 70 Okla. Cr. 355, 106 P. 2d 280. Also, that admission of incompetent evidence, where such facts otherwise proved, is harmless. Ford v. State, 23 Okla. Cr. 46, 212 P. 444; Miller v. State, 50 Okla. Cr. 28, 295 P. 620; Allcott v. State, 55 Okla. Cr. 128, 25 P. 2d 1112; and that on appeal, burden is upon appellant to establish both error and prejudice resulting therefrom. Nowlin v. State, 65 Okla. Cr. 165, 166, 83 P. 2d 601; Murphy v. State, 72 Okla. Cr. 1, 112 P. 2d 438; Selsor v. State, 59 Okla. Cr. 16, 55 P. 2d 789.

See, also, Cotter v. State, 74 Okla. Cr. 304, 125 P. 2d 777, where this court held:

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial rights by the commission of error.

"Appellate court will not reverse for rulings on evidence on trial errors unless record discloses miscarriage

of justice, or that errors substantially violate constitutional or statutory rights."

It is also urged that the court erred in refusing to permit the defendant to testify as to why he and his father went to Nowata on the day of the difficulty, and in refusing to permit him to show that he was driving the car that day on account of his father being in ill health and not able to drive the car. The court did permit defendant to testify why he and his father went to Wann on the day of the difficulty, and he testified that they went to Wann that day to look for a man named Chatman, with whom they had business, and also to mail a package. It would not appear that it was material to the issues involved as to why they drove to Nowata. Defendant did bring out that his father was in ill health, but the court did not permit him to show that one of the reasons why he was with his father in Wann the day of the difficulty was to drive him by reason of his father being in poor physical condition. In view of this claim of poor physical condition of the father being brought out otherwise, we do not conclude that the error was so great as to warrant reversal in this case. See cases last herein cited.

It is claimed that the county attorney was guilty of misconduct in the cross-examination of a number of defendant's character witnesses, as follows:

"Q. Did you ever hear of him and his daddy jumping on a man Smelson, and beating him pretty near to death out there? A. No, sir. Q. You never heard about that one? A. No, sir."

The record shows that the county attorney asked the first character witness the above questions, and no objections were interposed by counsel for the defendant, but when the same questions were asked the second char-

acter witness, objections were interposed and were sustained, and the questions were not thereafter asked other character witnesses. The defendant did not take the stand and deny the inference created by such questions being asked.

Clearly the cross-examination was proper if made in good faith. Long v. State, 61 Okla. Cr. 274, 67 P. 2d 980; Allen v. State, 72 Okla. Cr. 102, 113 P. 2d 835. If not made in good faith, such tactics would be most unfair and reprehensible, and would probably justify a reversal of the case. But if counsel for the defendant was convinced from his investigation that there was no basis for the question, but that they were asked for the purpose of prejudicing the minds of the jury, then the assignment of error should have been raised by the defendant's motion for new trial, and supported by affidavits, and thus afforded the court an opportunity to pass on the question of fact as to the good faith of the county attorney in asking questions complained of. We find nothing in the record to show that the county attorney was guilty of misconduct in his manner of cross-examination of the defendant's character witnesses. This court is bound by the record. In Mills v. State, 73 Okla. Cr. 98, 118 P. 2d 259, we said:

"Alleged misconduct of county attorney in asking improper questions will not be considered by this court, where the question is not preserved in any manner before the trial court, but is raised for the first time on appeal."

The case is affirmed.

JONES, P. J., and BRETT, J., concur.