## TAYLOR v. STATE.

No. A-11661. Dec. 10, 1952.

Rehearing Denied Jan. 21, 1953.

(251 P. 2d 523.)

Caldwell, Warren & Caldwell, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen. for defendant in error.

JONES, J. The defendant, Bob H. Taylor, was charged in the district court of Canadian county with the crime of larceny of domestic animals, to wit: two cows; was tried; convicted of an attempt to commit larceny of domestic animals with the punishment left to the court; the court sentenced the defendant to serve a term of three years imprisonment in the penitentiary.

The principal contention raised by the accused on appeal is that the evidence of the state was wholly circumstantial and was insufficient to sustain the conviction.

Millard Cassel testified that he lived 2½ miles west of Yukon and 5 miles south; that about 3:00 a.m. on October 23, 1950, his wife noticed some of their cows standing in the yard around their house; that he arose and dressed without turning on the light; that he went to the barn to see whether the gate had been left open and found that it was closed; that he saw a pickup truck parked in the section line road a short distance from the house and when he switched on his flashlight he saw a man jump into the truck and start driving. Cassel ran into the house, got his shotgun and car keys, entered his automobile and started in the direction the truck was driving. At the intersection of the section line he saw that fresh tracks showed the truck had turned west. Cassel saw the truck and it was driving without lights in an apparent effort to evade pursuit. He saw the brake lights on the rear of the truck turn on when the driver stepped on the brake. Cassell attempted to stop the truck by running alongside of it and when he would do that the truck would force him off the road. Finally, the truck came to a dead end and stopped. Cassel pointed the shotgun at the defendant who was the driver of the truck, and ordered him to stop. Defendant attempted to turn the truck around by backing it into a ditch and became stuck. Cassel then asked defendant what he was doing at his house and defendant stated, "It was none of his damn business". Cassel then got a farmer who lived close by to call the sheriff. While Cassel was at the farmer's house the defendant attempted to pull his truck out of the ditch with a winch line which he fastened to two big corner posts, but he had pulled the posts down and was unable to move the truck. When the sheriff arrived he took the defendant to jail. Cassel further testified that when he returned to his home it was about daylight and he and his son started milking the cows. They missed two of the cows and upon looking for them found them tied together about 150 yards west of the barn hidden behind some Mulberry trees along the side of the road. This was where the pickup truck had been parked. The fence had been cut and the cows had been taken through the fence to the section line. Cassel did not see the cows when he first started chasing the truck because they were hidden behind the trees and Cassel had not turned on the lights to his car as he did not want the driver of the truck to know that he was pursuing him. Cassel further testified that it was a moonlight night and that when he emerged from the house with his car keys, to start pursuit of defendant he could see the truck and saw defendant hit his stop light brake at the first section line intersection and he did not lose sight of the truck after that. When he got close enough to the truck to see the license number he saw that it was a Texas license number 2301. After defendant had stopped the truck it was seen that the license tag on the front of the truck did not correspond with the number on the rear of the truck, but a loose tag was found in the seat of the truck which corresponded with the tag on the front of the truck. Later when Cassel returned to where the truck had been stuck he made a search of the area and found where tag number 2301 had been removed and stuck in the edge of the field bottom side up. He picked up the tag and delivered it to the sheriff. He further testified that the cows which were tied in the road had a market value exceeding $500.

Mrs. Millard Cassel testified to substantially the same facts as her husband concerning the disappearance of the cows and her husband leaving the premises to chase the truck. She further testified that at the place where the truck was parked there was a clear imprint of some boot tracks which were discovered the next morning when they examined the place where the truck was parked, and a photographer was brought from town to take a picture of the tracks.

Lloyd Palmer, sheriff of Canadian county, testified that he drove to where the defendant had become stuck in the ditch south of Yukon. He arrested defendant and placed him in jail. Shortly thereafter he received a telephone call from Mr. Cassel and he drove to Cassel's farm and found two cows tied in the section line to a fence post. He examined the premises and saw where the wire fence had been cut. The cows were tied with a lariat. He examined the pickup truck at the place where it was stuck and saw a tag on the front which corresponded with another which was between the seats on the running board. A search of the defendant revealed that he had the bolts that fastened the tag in his pockets. Later Cassel brought him another tag which was Texas license number 2301. He took defendant's shoes and carried them back to the Cassel farm and compared them with some footprints in the sand in a bar ditch. Defendant had some diamond shaped marks on the sole of his shoes and they were identical to those in the bar ditch. The shoes made the identical print as that shown in the sand. They were army combat boots. He took the photographer out to take a picture of the tracks and also of the tires of the truck.

E. C. Kehrer testified that he was in the business of photography. In October, 1950 he was taken by the sheriff to the home of Millard Cassel to take some pictures. He took a picture of a cattle lane leading from the Cassel home, of a footprint, and of a tire mark. These photographs were all identified and admitted in evidence. He also took a picture of a truck tire that was on a truck which the state's evidence showed was the truck that was driven by the defendant on the night of the alleged commission of the crime. (While this court does not pose as experts concerning footprints or tire prints, the picture of the truck tire and of the imprint of the truck tire in the sand when laid side by side show plainly that they were identical.)

This was all of the evidence of the state and the defendant offered no evidence in his behalf. We think this evidence is sufficent to support the conviction for an attempted larceny of the cows. We have these strong facts established which point to the guilt of the accused. (1) The wire fence had been cut and two cows had been removed from the enclosure and tied. (2) The footprints at the place where the cows were tied were identical to those made by defendant's combat boots. (3) The tire tracks in the sand at the place where the cows were tied were identical to the tire tracks made by defendant's truck. (4) Defendant drove his truck without lights for several miles while he was being pursued by Cassel and attempted to run Cassel off the road when he would try to stop him. (5) Defendant had two sets of tags to attempt to confuse any pursuer. (6) When interrogated by Cassel as to why he had been to his farm he did not deny being there but stated, "That is none of your damn business".

We think this evidence clearly excludes any other reasonable hypothesis than defendant's guilt. In Dunbar v. State, 75 Okla. Cr. 275, 131 P. 2d 116, this court stated:

"An attempt to commit a crime consists of the following elements: First, the intent to commit the crime. Second, performance of some act toward commission thereof. Third, the failure to consummate its commission.

"Overt act is sufficient to complete offense of attempt to commit crime, if it goes far enough toward accomplishment of offense to amount to commencement of its consummation.

" Attempt to commit crime,' as distinguished from mere preparation, consists of a direct movement toward consummation of intended crime after preparations have been made."

Under the above law we find here established facts which support every element of the crime of attempted larceny of the cows.

It is next contended that the substantial rights of the defendant were prejudiced by improper remarks made by counsel for the state in the presence of the jury. Some of the remarks made by counsel were in response to questions asked by the court and we do not find them to be objectionable or prejudicial to the accused in the light of the evidence.

The most serious question under this assignment of error concerns the argument of the prosecutor to the jury in which the prosecutor said, "The evidence of the state is not contradicted". It is contended by the defendant that this statement by the county attorney was a comment by counsel upon the failure of the defendant to testify and was a violation of the statute. 22 O.S. 1951 § 701. In Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191, this court held:

"Statements of the prosecuting attorney, in argument to the jury, 'Why couldn't they contradict the state's testimony, but not one place do they do that,' and 'I say again there is no evidence offered to contradict the state's evidence in this case,' held, not a comment upon the failure of the defendant to testify as a witness in his own behalf, within the meaning of section 3068, St. 1931 (22 Okla. St. Ann. § 701)."

In the body of the opinion this court quoted from McDonald v. State, 59 Okla. Cr. 318, 58 P. 2d 345, as follows:

"The statute, section 3068, supra, is comprehensive in the extreme and this court will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in his behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the state's evidence by proof other than that which might be given by the defendant personally. Murrell v. State, 34 Okla. Cr. 413, 246 P. 644; McDaniel v. State, 35 Okla. Cr. 425, 250 P. 804; Soper v. State, 22 Okla. Cr. 27, 208 P. 1044."

Frankly, we do not approve of counsel for the state trying to see how close they can come to commenting upon the failure of the defendant to testify without violating the statute, but this court seems to be committed to the rule that the prosecution might say in the argument that the evidence of the state has not been denied or contradicted. Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834; Sellers v. State, 88 Okla. Cr. 114, 200 P. 2d 443, 444.

Lastly, it is contended that the judgment was excessive. The jury did not fix the punishment in their verdict. The trial court after carefully considering the evidence fixed the punishment at three years imprisonment in the penitentiary. The maximum that could have been given upon conviction for attempted larceny of these cows was a term of five years imprisonment in the penitentiary. If the defendant had not been detected just prior to loading the cows the jury undoubtedly would have convicted him of the larceny and given him a much more severe punishment. The facts would indicate that the defendant might have been an experienced and seasoned offender. We cannot conclude that justice required a modification of the sentence. The judgment and sentence of the district court of Canadian county is accordingly affirmed.

BRETT, P. J., and POWELL, J., concur.