# FREEMAN v. STATE.

No. A-11831.   Oct. 21, 1953.

(262 P. 2d 713.)

JONES, J.  Alva Darnell Freeman, hereinafter referred to as defendant, was charged by an information filed in the district court of Oklahoma county with

the crime of murder; was tried, found guilty by verdict of the jury of manslaughter in the first degree, but the jury left the punishment to be fixed by the court; thereafter, the defendant was given the minimum sentence of four years imprisonment in the penitentiary, and has appealed.

The following specifications of error are presented in the brief of defendant. One, the county attorney was guilty of misconduct on the voir dire examination of the jurors when he exacted a promise from each juror not to consider evidence as to deceased's prior criminal record. Two, error of the court in giving the sixth paragraph of instruction No. 13. Three, the county attorney was guilty of misconduct in his closing argument. Four, while the errors considered singly might not be sufficient to constitute reversible error, their cumulative effect deprived the defendant of a fair and impartial trial.

The alleged incident presented in the first assignment of error does not appear in the case-made until after the case-made was certified by the court reporter and the court clerk to be a full, true and complete case-made. Judgment and sentence was pronounced on February 28, 1952. On July 24, 1952, counsel for defendant filed a pleading denominated "Defendant's Suggested Amendments to Case-Made," and in these suggested amendments appears the first reference to the voir dire examination of the jurors and counsel for the defendant attempt to set forth their recollection as to the questions asked by the assistant county attorney of the prospective jurors and their answers to such questions. On July 30, 1952, a hearing was held before the trial court upon the defendant's suggested amendments to the case-made and after the hearing the trial court set forth his findings as to each suggested amendment and concluded with this order:

"It Is Therefore Ordered and Adjudged that the defendant's Suggested Amendments to this Case-Made be, and the same are hereby, overruled and disallowed; and,

"It is Hereby Ordered that such Suggested Amendments shall not be incorporated in and made a part of this Case-Made."

We therefore find that the case-made wholly fails to support the contention presented by the first assignment of error. In the case of Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258, 259, this court held:

"A matter assigned as error in the motion for a new trial and in the petition in error, but not shown by the case-made to be true, cannot be considered in the appellate court."

It has been many times held that matters occurring in open court in the progress of a trial, of which the judge must have knowledge, cannot be incorporated in the record by affidavits, but must be made a part of the case-made by proper recitals certified to by the trial judge. Cochran v. State, 4 Okla. Cr. 379, 111 P. 974; Sing v. State, 4 Okla. Cr. 544, 113 P. 204; White v. State, 20 Okla. Cr. 182, 201 P. 522.

By statute, a method has been provided for the settlement of disputed facts excluded from the case-made by the trial judge, which counsel could have followed if they had so desired. 12 O.S. 1951 § 965.

The second assignment of error is directed to the sixth paragraph of instruction No. 13. Instruction No. 13 was a very comprehensive instruction on the law of self-defense, and consisted of eight paragraphs. Most of the paragraphs were favorable to the accused. The paragraph to which this attack is directed is the one which is ordinarily given in a homicide case where there is an element of

mutual combat shown by the evidence. The part of the instruction objected to reads:

"The right of self-defense is given to the citizen for his protection, and it cannot be pleaded as a defense and relied upon for an acquittal by one who himself is the aggressor, or by one who enters voluntarily into a difficulty armed with a deadly weapon, no matter how great his danger or how imminent his peril may become during the course of the difficulty. But one who is not the aggressor and is in a place where he has a right to be, when violently assaulted, or, when by the hostile conduct or demonstration of another he is induced to apprehend a design on the part of the latter to take his life, or inflict upon him some great personal injury, may without retreating, stand his ground, and resort to the use of such force and violence as to him seems reasonably necessary for his own safety."

A short statement of the evidence should be given in connection with this proposition. The killing of Dee Cheek by the defendant by stabbing him with a pocket knife about 7:00 o'clock p. m. on October 20, 1950, in front of the Rendezvous Club, a beer parlor on Southwest 29th Street in Oklahoma City, was admitted. The plea was self-defense and in connection with that plea it was shown that Cheek had served two terms in the State Penitentiary for burglary and larceny, and had been arrested in Texas on a charge of aggravated assault. Several witnesses for the defendant testified that deceased had a reputation for being quarrelsome and turbulent. The proof showed that the deceased and the defendant had an argument in the beer parlor about whether the defendant owed the deceased a beer. The deceased said Freeman owed him a beer and Freeman told the barmaid to give him a beer. Then the deceased said defendant owed him five beers and Freeman said to give him five beers. Later the parties went out of the tavern where the fatal knife thrusts were made.

Bernard Kodeliski testified for the state that he heard Cheek and Freeman jostling each other about buying a beer. Then Freeman said, "Let's go outside and settle this once and for all." Freeman went out the door first and Cheek shuffled along behind him with his hands out in front of him. His hands were not in his pockets. The witness walked out the door behind Cheek and when he did so, he saw Freeman facing west with his back to the door. He put his hand on Freeman's shoulders and said, "You had better get on inside before you start a commotion out here." Cheek was standing there and said, "You got me a good one."

Freeman went back on the inside of the beer parlor and Cheek started to walk away and fell down. He had been stabbed.

Kathryn Bryant, the barmaid at the tavern, testified that Cheek and Freeman argued back and forth with each other and she finally heard Freeman say, "O. K., let's take it outside and settle this once and for all." Freeman walked out the door first and Cheek followed.

Several of the police officers testified. Those who searched the deceased within a few minutes after the altercation occurred testified that they found a small pocket knife closed in Cheek's pocket. The proof also showed that Freeman gave a written statement to the police officers in which he stated in regard to the homicide as follows:

"I didn't want to have any trouble in there so I asked the man, I said, 'You asked for trouble, we just as well get it over with, so let's go outside.' So I walked ahead of him. He followed me outside. He had his hand in his pocket. I figured he was coming out with a knife. When he came out the door he jumped onto me and I stabbed him. He stepped back. He jumped into me again and I stabbed him. It might have happened again, but I don't believe

it did. Q. You made the statement this man had his hand in his pocket. A. I did. Q. When did he have his hand in his pocket and when did he pull it out? A. He had his right hand in his pocket when he came to the door, and when he came through the door he jumped at me and I don't know where his hands was. I did not see a knife. Q. Did he ever make another effort to pull a knife from his pocket? A. No, he did not. Q. Did Cheek ever strike you? A. No. When he dove into me I stabbed him and jumped back every time."

Under the above evidence, one might reasonably conclude that the defendant deliberately armed himself with his pocket knife, went outside of the door of the tavern for the purpose of "ending once and for all" the friction between him and the deceased. He thus entered into a mutual combat and accordingly deprived himself of the right to plead self-defense. Jenkins v. State, 80 Okla. Cr. 328, 161 P. 2d 90, 162 P. 2d 336; Johnson v. State, 69 Okla. Cr. 51, 101 P. 2d 265; Gross v. State, 50 Okla. Cr. 226, 297 P. 309; Phelps v. State, 64 Okla. Cr. 240, 78 P. 2d 1068.

In the case of Jenkins v. State, supra, this court quoted with approval from the early case of Koozer v. State, 7 Okla. Cr. 336, 123 P. 554, as follows:

" 'Where a defendant without real or apparent necessity voluntarily enters into a mutual combat with another, in which he takes the life of his antagonist, such killing will not be in self-defense, but the defendant will be guilty of either murder or manslaughter, according to the circumstances and nature of such combat."

In Phelps v. State, supra, it was held:

"One who enters willingly into a combat and fights willingly, not for his own protection, but to gratify his passion by inflicting injury upon his adversary, engages in mutual combat."

The instruction complained of is one which has been given many times by this court where there was some evidence that the deceased and the accused voluntarily entered into a difficulty out of which the homicide occurred. Jenkins v. State, supra. It is our conclusion that the facts hereinabove related were sufficient to support the trial judge in submitting this issue to the jury in the form in which it was given in said instruction.

In connection with the contention of defendant that the county attorney was guilty of misconduct in his argument to the jury, the record discloses the following occurred:

"Note by Reporter: During the progress of the closing argument by Mr. Oliver, Mr. Harrod approached the Reporter's Desk, and dictated the following statement, and the following proceedings were had, to-wit: Mr. Harrod: Comes now the defendant and objects to the statement of the County Attorney in his closing argument, 'There are three brothers in the Court Room', and turns around and asks the brothers to stand up. The Court: Let the record further show that was in answer to a statement made by counsel for the defendant in his argument to the effect that no person whomsoever, relative or otherwise, was present here in Court or needed him, or there is none to mourn the death of the deceased, or words to that effect. I think that is substantially correct, isn't it?

"Mr. Harrod: No, sir, I said, 'According to the record there isn't anybody here', and according to the record there wasn't. That is the statement I made. The Court: I didn't get that inference. Mr. Harrod: There is no proof these are the boy's brothers. Mr. Oliver: The statement is correct in reply to argument of Laynie W. Harrod, one attorney for the defendant, who said there was no member of the deceased's family here or interested in the trial. Mr. Harrod: There is no evidence and he can't offer evidence now these are his brothers. The Court: The objection will be overruled. Mr. Harrod: Note our exception."

In Hathcox v. State, 94 Okla. Cr. 110, 230 P. 2d 927, this court held:

"Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.

\* \* \*

"Counsel for a defendant must not only object to alleged improper statements of the county attorney in his argument to the jury, but he must go further and move the court to exclude such remarks from the jury and instruct them not to consider them for any purpose, unless the remarks were of such a character that the error would not be cured by a withdrawal of the remarks."

See, also, Peters v. State, 71 Okla. Cr. 175, 110 P. 2d 300; Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646.

In applying the above rules of law to the record before us, it is ascertained that there was no motion by counsel to have the court exclude such remarks and instruct the jury not to consider them. Furthermore, it appears that though the remarks of the county attorney, when considered alone, might appear objectionable as going outside of the record for the purpose of prejudicing the defendant, yet when the record is considered altogether it is apparent that the objectionable remarks were made in answer to improper remarks made by counsel for defendant that there was no member of the deceased's family present or apparently interested in the trial. Under this state of the record, we do not consider the argument of the county attorney as reversible error.

In view of the fact that we have determined that each of the above three assignments of error were without substantial merit, we do not deem it necessary to discuss the fourth assignment of error, wherein it is contended that there was an accumulation of errors, which, when considered together, would have constituted reversible error. No other alleged errors are mentioned in connection with this assignment of error other than the ones hereinabove discussed.

It is our conclusion that the defendant had a fair and impartial trial in substantial compliance with the law. There may have been some mistakes made in the progress of the trial, but they were inconsequential and did not deprive the defendant of a fair trial. It appears to us that at the moment of the killing, there was not sufficient provocation to have justified the taking of human life and defendant was fortunate that he received the minimum sentence of four years' imprisonment.

The judgment and sentence of the district court of Oklahoma county is accordingly affirmed.

POWELL, P. J., and BRETT, J., concur.