Howard GADDIS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14579.

Court of Criminal Appeals of Oklahoma.

Oct. 16, 1968.

Rehearing Denied Nov. 27, 1968.

E. Melvin Porter, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Howard Gaddis, hereinafter referred to as defendant, was convicted of the murder of Jeanette R. Morroone, allegedly committed on the 12th day of January, 1967. He was tried by a jury, found guilty, and from the judgment and sentence fixing his punishment at death, he appeals.

From the record it appears that on the evening of January 12, 1967, Sally Holden returned to her apartment at 1645 North Lindsey in Oklahoma City, where she found her roommate, Jeanette Morroone, dead. She notified the police who conducted an extensive search of the premises which yielded stained sheets, pubic hair of Caucasion origin and hair from the head of a member of the Negroid race. There was also discovered feed dust consisting of wheat, oats, corn and milo on the sheets in the apartment where the homicide occurred. An autopsy of the victim of the homicide disclosed that there were three wounds which appeared to be gunshot wounds in the left chest, and the cause of death was extensive aspiration and hemorrhage of the left lung. The results of the autopsy also revealed marks evidencing strangulation on the victim's neck and spermatozoa was present in the victim's vagina.

The evidence above referred to, together with evidence obtained as a result of a search of the defendant's premises, conducted under authority of a search warrant, and a .380 caliber Llama automatic pistol recovered from one Otis Hammons, brother-in-law of the defendant, to whom the defendant had given the weapon the next day after the homicide was committed, were transmitted to laboratory technicians of the Oklahoma Bureau of Investi-

gation and the Federal Bureau of Investigation. Their relevant testimony may be summarized as follows:

It was established by Ray Lambert, firearms examiner for the Oklahoma State Bureau of Investigation, that as a result of comparisons made of test bullets fired by him into a recovery box from the gun which was established to have been given the officers by Otis Hammons and certain spent bullets recovered from the body and underneath the body of Jeanette Morroone, it was his opinion that the latter were fired by the gun admitted in evidence.

Paul N. Stombaugh, Special Agent of the F.B.I., testified that he was a specialist with the hair and fiber unit of the F.B.I. In substance, this witness testified that he analyzed certain fragments of hair obtained from the sheets and from the vacuuming of Jeanette Morroone's apartment. He also analyzed fragments of hair removed from the clothing obtained through a search of defendant's residence. He determined that these fragments were head hair of Negroid origin. He concluded that all of the fragments originated from the same individual or from two individual members of the Negro race whose head hairs were identical in all of the characteristics seen under the microscope, and considered this latter possibility to be very remote. He further testified, that on one pair of undershorts which he examined and which belonged to the defendant, he found a single full length light brown pubic hair which he determined to be of Caucasian origin. He also examined 15 or 16 hairs taken from the sheets removed from the victim's apartment. He determined these to also be pubic hairs of Caucasian origin and further concluded that the hair removed from the defendant's undershorts came from the same person as the 15 or 16 hairs from the sheets, or from two members of the Caucasian race whose pubic hairs were identical in all microscopic characteristics.

Paul Rene Bidez, another Special Agent of the F.B.I., testified that his work consisted principally of the examination and identification of blood and other body fluids. He testified that he analyzed stains found on the sheets taken from the victim's apartment to be blood of human origin. He also found semen within the blood stains. On the fly of a pair of the trousers which belonged to defendant and on the fly of a pair of undershorts belonging to defendant, he also found stains which he determined to be blood of human origin. He found semen on the front area of the undershorts.

Richard W. Flach, the third Special Agent, testified that he was a specialist in soils, minerals and botanical material. He examined certain substances removed from the gloves and articles of clothing belonging to defendant and compared it with that removed from the bed sheets from the victim's apartment. It was his conclusion that all of this debris consisted of particles of wheat, oats, corn and milo and that it all could have come from the same source.

On the trial, Harold F. Middleton testified that he was manager of the Hammond Mills and that the defendant worked there during the time that this homicide occurred. Basically he testified that Hammond Mills manufactured livestock and poultry feed, which was produced by grinding up corn, oats, milo, barley and other such ingredients, and anyone working there would necessarily get such feed dust on their clothing.

No evidence was offered on behalf of the defendant, nor did he take the stand in his own behalf.

On appeal, defendant first contends that the trial court erred in admitting evidence obtained as a result of an illegal search and seizure. This argument in substance is that while the affidavit was in positive terms, he should be able to go behind the affidavit for the search warrant and show that the officer upon whose affidavit the search warrant was issued did not have positive knowledge that the articles sought to be seized under the search warrant were in the possession of the defendant and he

refers to some of the testimony of Officer LeMay upon whose affidavit the search warrant was issued, as supporting his position.

■ We are of the opinion that this assignment of error is wholly without merit, for we have repeatedly held, in an unbroken line of decisions, that:

"Where an affidavit to procure a search warrant is in positive terms, one will not be permitted to go behind the affidavit and show the officers did not have knowledge of the charges alleged in the affidavit."

See Baker v. State, (September 4, 1968), Okl.Cr., 448 P.2d 282, and Crossland v. State, Okl.Cr., 266 P.2d 649. To this same effect, see Griffin v. State, 95 Okl.Cr. 421, 246 P.2d 424; Padgett v. State, 96 Okl.Cr. 82, 248 P.2d 1055; Workman v. State, 83 Okl.Cr. 245, 175 P.2d 381; and Blair v. State, 55 Okl.Cr. 280, 29 P.2d 998.

■ It is next contended that this cause should be reversed because of the prejudicial remarks of the prosecutor in his closing argument, when he stated:

"I will point out to you that this defendant through his counsel has never denied that he is guilty."

(CM 322). The defendant argues that although no objection was interposed at the time this statement was made, nor exception taken to the ruling of the court, that the error was so fundamental as to require reversal. We believe this argument is so clearly and succinctly dealt with in the excellent brief of the State, prepared by the Assistant Attorney General, Mr. Charles Owens, that we here take the liberty to quote therefrom.

"The particular remark of the prosecutor which counsel asserts to be cause for reversal of this case is this (CM 322):

'I will point out to you that this Defendant through his counsel has never denied that he is guilty.'

It is his contention that such remark is clearly within the prohibition of 22 O.S. 1961, § 701, which provides:

'In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial.'

Before going to the merits of this allegation we would suggest that this court could, and likely should, attach great significance to the fact that during the heat of battle in the trial of this case, when the full impact of a prejudicial statement is felt and seen, counsel for defendant stood mute throughout what he later determined to be, from *hindsight* and after a reading of the cold record, glaring misconduct on the part of the prosecutor. To what can we attribute his silence? Apparently he thought the prosecutor's remark was provoked by his own argument, which we will discuss more fully later, or he felt *at that time* that such remark was not prejudicial. At any rate, counsel did not object and he is, therefore, faced squarely with that rule of law as set out by this court in the case of Grimes v. State, Okl.Cr., 365 P.2d 739, wherein the sixteenth paragraph of the syllabus advises:

'Objections must be made to improper argument during the trial, and defendant must go further and move the objectionable argument be stricken from the jury's consideration, unless the remarks were such they could not be cured by their withdrawal from the jury.'

This court uses substantially the same language in the case of McMahan v. State, Okl.Cr., 354 P.2d 476.

Of equal significance in determining whether the court should even consider this specification of error is the fact that the alleged error now complained of appears at no place in the defendant's motion

for new trial, although he sets out twelve assignments of error. This, of course, leads to that principle which is typically stated by this court in the second paragraph of the syllabus of the opinion in the case of Grant v. State, Okl.Cr., 385 P.2d 925, as follows:

'Errors, not fundamental or jurisdiction in character, will not be considered on appeal unless they are incorporated in the motion for new trial and the ruling thereon excepted to and assigned as error.'

To this same effect see Application of Jones, Okl.Cr., 365 P.2d 833; Parker v. State, 96 Okl.Cr. 323, 253 P.2d 1085; Anglin v. State, 92 Okl.Cr. 430, 224 P.2d 272; Todd v. State, 82 Okl.Cr. 424, 172 P.2d 345; Langley v. State, 53 Okl.Cr. 401, 12 P.2d 254; Ellis v. State, 51 Okl.Cr. 449, 2 P.2d 282.

There is sound reasoning behind such a principle of law. Obviously, it is designed to prevent a defendant's attorney from 'laying behind a log,' so to speak, and bringing up a question for the first time on appeal. Where this is done, as it was done here, the trial court has no opportunity to administer the proper remedy when the need for same arises. Here, had counsel objected at the time the remark was made, then the trial court could have considered the objection and if he thought it was a valid one he could have instructed the jury to disregard the statement. Moreover, had counsel incorporated this assignment of error in his motion for new trial, then the trial court would have had an opportunity to hear arguments on the question, have both sides advise him as to the applicable law and, if appropriate, grant a new trial and thus remove from this court the burden of, in effect, having to assume the trial court's duties. For either or both of the above reasons, we submit that the court should decline to consider this question, by reason of the fact counsel has not preserved his right to bring it to this court's attention.

But those technicalities aside, it is the State's position that even on its merits this contention cannot be supported. In considering this question, we submit that two general rules should be kept in mind by the court. First, this court has on many occasions held that the statute forbidding comment on the failure of the accused to testify in his own behalf does not prevent fair argument of the testimony. Buie v. State, Okl.Cr., 368 P.2d 663. In so holding, this Court has frequently held to be proper a statement that the state's evidence was 'uncontradicted.' Spears v. State, 97 Okl.Cr. 249, 261 P.2d 464. Taylor v. State, 96 Okl.Cr. 188, 251 P.2d 523. Moreover, this Court has held to be proper such statements by the prosecutor as 'There was not one word of controversy on the other side about what happened.' Denney v. State, Okl.Cr., 346 P.2d 359; and that the prosecutor 'knew that there was no defense to the case and none has been offered, so far.' Buie v. State, supra; that 'the defendant could not find one witness to testify for him,' Porter v. State, 76 Okl.Cr. 16, 133 P.2d 903; and 'What does the defense say about this? They don't say anything, it is undisputed,' McDonald v. State, 59 Okl.Cr. 318, 58 P.2d 345; and 'The defendant had the stolen property. There is no other fact. Nobody has given you any other fact,' Starr v. State, 63 Okl.Cr. 302, 74 P.2d 1174.

This Court has reasoned in this connection as it did in the second syllabus of the case of Denney v. State, supra, which holds:

'The Oklahoma statute prohibiting comment on failure of defendant to testify is comprehensive in the extreme and the Court of Criminal Appeals will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in her behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evidence by proper proof other than that

which might be given by the defendant personally.'

We submit that the prosecutor, in the light of the previous decisions of this court, made a proper comment upon the inferences reasonably to be drawn from a failure to controvert the State's evidence. Moreover, there is a second general rule which is quite applicable here. A good statement of same is contained in 23A C.J. S. Criminal Law § 1108, as follows:

'* * * On the other hand, wide latitude is given the prosecuting attorney in making reply to argument previously made by accused's counsel; and for the purpose of determining whether a statement made by the prosecuting attorney in argument is proper, *the statement must be viewed in the light of the preceding argument of defense counsel* to which the argument under consideration is an answer, or which may have prompted it. Also, the prosecutor has the right to comment fairly in order to correct a false impression created by the remarks of accused's counsel, or to bring a matter into its proper perspective.

So, as a general rule, remarks of the prosecuting attorney, *including such as might or would otherwise be improper,* are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to, or retaliation for, his acts or statements, at least where the prosecuting attorney's remarks are not excessive, but are justified replies, * * *' (Emphasis supplied)

This court has brought Oklahoma in line with this general rule in the cases of Freeman v. State, 97 Okl.Cr. 275, 262 P.2d 713, Dixon v. State, 56 Okl.Cr. 454, 42 P.2d 286, Woodruff v. State, 56 Okl.Cr. 409, 41 P.2d 129, Dale v. State, 54 Okl.Cr. 258, 18 P.2d 549.

This general rule assumes significance when defense counsel's closing argument, which preceded the State's final argument, is examined closely. So as not to unduly burden this brief by quoting at length from counsel's argument, which this court will examine in its entirety, we will only state what we feel to be the substance of same. Counsel first of all practically concedes that his client is guilty as charged, but he asks that the jury give the defendant a life sentence rather than a sentence of death. He does not attempt to justify such request by any mitigating circumstances brought out in the evidence, but, rather, he dwells on the horrors of death by electrocution. He forthrightly asks the jury that they disregard their oath as jurors, and, in effect, by their verdict repeal, in this one case at least, the law establishing the death penalty as one of the punishments for murder in Oklahoma.

The further thrust of counsel's argument is that society, not Gaddis, is on trial and that society, by permitting poverty and ignorance to exist in America, especially in regard to the Negro race, has spawned such a man as Gaddis, and this same society therefore has no right to take his life. He further urges that Jeanette Morroone is now dead and that it would serve no *useful purpose to send defendant to his* death, and finally he pleads that only God, and not mere man, has the power to take away a human life.

Certain specific language of counsel should be noted here. See the following (CM 306):

'Now, I know Mr. Harris is going to say that I have made a passionate and an emotional argument to you, *but that is all I have to stand on.*'

He also makes this statement (CM 308):

"Where did the blood come from? That question remains unanswered and *only the defendant could answer it.*'

Counsel admits that he can only hope to save the defendant from the electric chair by playing on the emotions of the jurors, and that the defendant has no valid defense to stand on. He acknowledges that certain critical questions raised by the State's evidence could only be answered by the defendant, but he urges on appeal that the prosecutor dare not retaliate to his provocation in his closing argument lest he

fall into reversible error. We submit that this was not within the contemplation of the legislature in enacting 22 O.S. 1961 § 701, nor has this court been inclined toward this theory in its previous decisions construing the meaning and intent of this statute."

We are of the opinion that the Attorney General's brief fully answers this contention and accordingly hold that although we do not feel that the question is properly before us in the instant case since the remark now assigned as error was not objected to with exceptions taken to the ruling of the court, nor preserved in the defendant's Motion for New Trial, it was invited by the defendant's counsel in his argument to the jury and was a proper response to his remarks. In any event, under all of the facts and attendant circumstances, the remark did not constitute error requiring modification or reversal.

This leads us to a consideration of the defendant's third assignment of error presented in his brief that the trial court erred in overruling his Motion for New Trial. Specifically, this assignment of error arose when the following proceedings occurred during the jury's deliberation and before they had arrived at a verdict. As reflected by the record beginning at page 327 of the casemade, the following appears:

"THE COURT: Let the record show the Jury is present in the box in Open Court, the Defendant is present in person and by his attorney, the State is present by the District Attorney. The Jury is in the box. Mr. Foreman, do you wish to say something?

THE FOREMAN: Yes, sir. If it please the Court—

THE COURT: What is your name, please?

THE FOREMAN: William Hess. When I took the oath to be on this jury, I took it with my whole heart and sincerely and I answered the questions sincerely. I have been in the jury room—

THE COURT: Wait just a minute please. You cannot say what took place in the jury room.

THE FOREMAN: The members of the Jury feel that I should be disqualified because of something that happened in my previous family relations in the past.

THE COURT: Please don't say anything that happened in that jury room. That is one place that no one can enter. Is this all you care to say?

THE FOREMAN: They feel I should be disqualified to remain on the Jury.

THE COURT: All right. Please remain where you are.

(Whereupon the Court, the attorneys, and the Defendant retired to the Judge's Chambers, outside the hearing of the Jury.)

THE COURT: Let the record show immediately after the statement made by the Juror, Mr. William Hess, the Court adjourned to chambers, the defendant is present in person and by his attorney, the State is present by the District Attorney. You have heard the statement, do you wish to make any comment outside the hearing of the Jury as to what action the Court should take?

MR. HARRIS: I think it is a disagreement among the Jurors. I think the jury should be sent back to deliberate.

THE COURT: Is there anything that you wish to say, Mr. Porter?

MR. PORTER: Whatever this disagreement is, it is based on what they feel and apparently he indicated there was some violation of his oath at the time he was seated. For this reason, I think he should be disqualified. It is my guess that apparently the jury and Mr. Hess have had some disagreement about this. He says that this, whatever it was, did not come up as a result of their deliberations. Whether Mr. Hess volunteered this, this is the only assumption that we could make since it was something about his past life. They feel apparently, that

this would make him unsatisfactory to serve. That might be to the benefit or might be to the detriment of the Defendant. That is the reason why I would hate to guess. Under these circumstances, I would ask the Court to declare a mistrial and excuse this Juror.

MR. HARRIS: I disagree with that, I ask the Court that the Jury be sent back to deliberate.

THE COURT: Motion for a new trial will be denied at this time. * * *"

Thereafter, the jury retired again to deliberate and returned a verdict of guilty and fixed the punishment as heretofore set out. In supporting his Motion for New Trial, the defendant was permitted to call Foreman Hess and examine him. There is nothing in the testimony of Hess which would indicate in any way that he was prejudiced against the defendant prior to his selection as a juror. There is, however, his admission that in response to a statement made by an elevator operator that if the operator were selected as a juror, Gaddis would be given the electric chair, that he (Hess) replied that he did not feel that way. It is now argued that the admission by this juror that he had discussed the case prior to being selected as a juror was contrary to statements made by him during his voir dire examination wherein counsel for the defendant asserts that he asked Hess if he had discussed the case with anyone and that Hess had replied that he had not.

The record is silent as to whether this question was asked on the voir dire examination; however, it is difficult to see how this juror's statement could be construed as indicating that he had a biased attitude and fixed opinion as to the defendant's guilt prior to being selected as a juror. Moreover, his testimony before the Court on the Motion for New Trial was that he had no opinion as to the defendant's guilt or bias against him prior to being selected as a juror and that after selection, he had tried to give the State and the defendant a fair and impartial hearing and had tried to discharge his duties as foreman in a fair and impartial manner. Upon the record before us, we are of the opinion that this assignment of error is without merit.

This appeal came on for oral argument on the 18th day of September, 1968, at which time counsel for defendant orally sought leave of the Court to amend the Petition in Error to state additional grounds upon which he seeks reversal. Thereupon, the Honorable Kirksey Nix, Presiding Judge of this Court, directed the defendant to file any written amended pleadings and additional briefs and granted him fifteen (15) days within which to file the same. The records of this Court reflect that no amendment has been made, nor does it appear in the record that the question sought to be raised in oral argument was raised during the trial, preserved in the Motion for New Trial and presented in the Petition in Error in this Court. We therefore hold that there is no substantial issue raised in addition to those which we have heretofore dealt with.

For all of the above and foregoing reasons, the judgment and sentence imposed is affirmed.

The date originally appointed for the execution of the defendant, Howard Gaddis, having passed pending this appeal, it is ordered, adjudged and decreed by this Court that the judgment and sentence of the District Court of Oklahoma County, be carried out by the electrocution of the defendant Howard Gaddis by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, December 20, 1968.

BRETT, J., concurs.

NIX, Presiding Judge (specially concurring).

I find no error of law in this record to justify modification or reversal.

### ORDER DENYING PETITION FOR REHEARING

Now on this 27th day of November, 1968, this Court having carefully consid-

ered the Petition for Rehearing filed by the Plaintiff in Error herein, and the request to intervene as *amicus curiae* filed by other parties, and the Court after carefully examining the record finds that all matters attempted to be raised have been dealt with directly or were not excepted to in the trial court, preserved in the record and the Plaintiff in Error's Motion for New Trial, or presented to this Court in the original Petition in Error filed in this case. These alleged errors not being properly preserved in the record present nothing for review on appeal, and we must accordingly deny the Petition for Rehearing.

We are supported in our conclusion by virtue of the fact that the judgment and sentence was rendered on the 24th day of May, 1967, an application for post conviction review was filed on December 1, 1967, and granted on December 19, 1967. Thereafter, on the 5th day of January, 1968, the appeal was filed in this Court and although a period of seventeen months elapsed between the time of rendition of judgment and sentence in the trial court

and the delivery of this Court's opinion on the 16th day of October, 1968, no written request was ever made to amend the record nor was a written request ever made for an evidentiary hearing, until after the rendition of said opinion.

It is therefore the order of this court that the Petition for Rehearing be, and the same is hereby, denied.

Witness our hands and the seal of this Court, this 27th day of November 1968.

KIRKSEY NIX, PRESIDING JUDGE

HEZ J. BUSSEY, JUDGE

TOM BRETT, JUDGE

ATTEST:

CLERK

Approved in conference this 27th day of November, 1968.