### E. R. STARR v. STATE.

No. A-9295.   Dec. 23, 1937.

(74 P. 2d 1174.)

Meacham, Meacham & Meacham, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The information in this case charges that on the 27th day of January, 1936, E. R. Starr and Clifford Smith, in the county of Custer, state of Oklahoma, committed the crime of burglary in the second degree. The defendants were jointly tried; a demurrer was sustained to the state's evidence as to Clifford Smith. Defendant Starr was convicted and sentenced to serve a term of two years in the state penitentiary. The record was properly preserved, and the defendant has appealed to this court.

The state, in order to maintain its allegations in the information called James Pfeiffer, who in substance testified:

"I live two and one-half miles northwest of Thomas, Okla.; was living there last January. I had some kaffir

corn stored in my granary; the door was locked and someone broke it open, taking the threshed kaffir corn from the granary; I had 52 bushel and they left seven or eight bushel in the granary; I saw where they loaded the sacks out, but the wind had blown hard that night and I could not tell definitely as to the tracks; the car seemed to have been left in the road and the kaffir corn carried from the granary; I tracked them nearly to Thomas, but could not follow the track any farther.

"I know W. C. Campbell, who claims to have lost a trailer the same night I lost my kaffir corn. The officers came out and made an investigation; the night watchman from Thomas and Everett Stambaugh came out to make the investigation. I know Clifford Smith, but do not know the defendant E. R. Starr; I do not know the men are related, but I understand they are. Smith's father lives in my neighborhood; I understand Clifford Smith was living down about Fort Cobb on the 27th day of January, 1936."

W. C. Campbell, testifying for the state, stated:

"I live about three miles north of Thomas; I know Mr. Pfeiffer, I live about a mile from him; Mr. Pfeiffer missed some kaffir corn, and I lost a two-wheel trailer the same night the kaffir corn was taken; I called the officers and received the information they were at Mr. Pfeiffer's; I did not undertake to track my trailer any farther than Mr. Pfeiffer's, as I received information they had lost the tracks. No one had any authority to take my trailer. I don't know where Mr. Starr was living at the time, but I understand he was living near Carnegie. I think Smith and Starr are brothers-in-law, married sisters. I got my trailer back. I found it about 12 miles south of Carnegie, about a mile and a half from where the defendant Starr lived. The casings were off and the wheels broken. This trailer was made from the rear axle of a Model T Ford; I had no trouble in identifying it; the front end gate was made of lumber, and the two beds lapped over like that (indicating); when it was

taken you could haul a cow in it, it had a stock rack on it. The Smith boys' parents lived up there at the time and are still living in that community."

J. E. Stambaugh stated:

"I am undersheriff, and was during the month of January, 1936; I learned of the theft of the kaffir corn and trailer; I could not track the trailer, for some cars had passed over the tracks; the kaffir corn seems to have been taken from the granary to the road; I saw, as near as I could tell, three different men's tracks; the building had been broken into.

"The Campbell trailer was described to me and I saw the trailer 12 miles southeast of Carnegie; I went with Mr. Campbell to get the trailer. The rubber was broken off the trailer and a wheel broken down, and the end gate was shy. It had been pulled over by the side of a place, I forget the old gentleman's name, it was not any of the defendants; I think from Mr. Campbells' place to where we found the trailer near Carnegie was about 40 or 50 miles, that would be my guess. I know Clyde Smith, Clifford's older brother, but I do not know where he is, I have tried to find him; I think Clyde was staying in Weatherford at the time of the commission of this alleged offense."

On redirect examination witness stated:

"I arrested these boys; found Mr. Starr at his home, and Mr. Smith at his home east of Fort Cobb; the trailer was found a mile and a half or a mile and three-quarters from the Starr place."

L. R. Jones, testifying for the state, stated:

"I live 11 miles south of Carnegie, Okla., in Caddo county; have lived there 16 years; I know Mr. Smith, but I do not know Mr. Starr—got acquainted with him the first of January this year—he lived in the community at that time, a little over two miles from me. I saw him last January in a car that was pulling a trailer; south of my place a little ways, it was tolerable early in the morning;

he had stopped near a bridge south of my place, out of gas I guess, I suggested that I push him down to the filling station, about a mile and a half, and I did. The car I pushed, I think, was a Chevrolet; I did not pay any attention to it; he was pulling an old two-wheel trailer made out of a Ford, and I noticed one sack of kaffir corn; I mentioned something about it being kaffir corn; there were three men, I only knew Mr. Starr; Mr. Starr was standing by the car; I don't know how to estimate whether the trailer was heavily loaded; there was a little kaffir corn out of one sack; before I started pushing the car down to the station the trailer was unhooked from the car; we left the trailer by the side of the road; I cannot give the exact time as to when this was. Q. Did you ever see the trailer again? A. Well, I think I saw it again. I don't believe the trailer had rubber tires on it when I helped detach it from the car; I can't say whether both tires had rubber on them or not; I remember there was one tire off; I saw the trailer, supposed to be the same trailer—some time later, it was found in front of my neighbor's house one morning, I don't remember just how long after I saw this man with the trailer on the road, but it must have been two or three weeks; the trailer I saw about a mile and a half in the grader ditch seemed to have been abandoned two or three weeks after I saw Mr. Starr and the two men with him on the road with the car and a trailer. I did not examine it."

P. B. Walters testified:

"I live 12 miles south and a mile west of Carnegie, in Caddo county; I know L. R. Jones and Starr the defendant; have known Starr about nine months. Mr. Starr lives about a mile from my house the way we have to go; I do not know Clifford Smith or Mr. Campbell; I saw a two-wheel trailer in the neighborhood about the 6th of February, about a mile east of my place; it was there a day or two, and they pulled it up off the highway into this yard; the trailer seemed to be made from an old model Ford back end, and of lumber; I saw some indications that oats had been in the trailer; I brought the trailer

over to the place I am speaking of from Harry Harkey's place; Harry Harkey is an Indian. I have not see him here today; we took the trailer down the road and did not go by my place."

No testimony was offered on the part of the defendant.

At the close of the state's testimony, the defendant demurred to the evidence of the state for the reason that the same is wholly insufficient to support or make the charge contained in the information, or any other offense. Defendant stated, "We want this demurrer to each defendant separately." Whereupon the demurrer of the defendant Clifford Smith was sustained and the demurrer as to the defendant E. R. Starr was overruled; to which action of the court the defendant E. R. Starr reserved an exception. The defendant then moved the court to instruct the jury to return a verdict of not guilty, which motion was by the court denied and exceptions saved.

The defendant has assigned three errors alleged to have been committed by the trial court: First, the court erred in overruling defendant's demurrer to the evidence of the state, and erred in denying the plaintiff in error's motion for a directed verdict; second, the evidence of the state is insufficient to sustain the verdict of the jury and the verdict is contrary to the evidence; third, council for the state made prejudicial argument to the jury and called the attention of the jury to the fact that the defendant did not testify.

There is no dispute that the Pfeiffer kaffir corn was taken from the granary, as testified to by him; and there is no dispute that a trailer belonging to Mr. W. C. Campbell was stolen from his place on the same night. It is admitted that the defendant Starr did not live in the com-

munity where Mr. Pfeiffer lived, and had never lived in that settlement.

The question for this court to decide from the evidence is: Does the testimony sufficiently show circumstances to warrant the sustaining of the verdict by the jury? The defendant was not seen by anyone in the neighborhood where the property is alleged to have been stolen, and was not seen by anyone within 50 miles of where the property is alleged to have been taken. The only evidence tending to connect the defendant with the taking of the kaffir corn is the testimony where the defendant and two other men were seen on the public highway about 60 miles from where the property is alleged to have been taken, the car out of gasoline, and the witness L. R. Jones stated he suggested to them that he push them to a filling station where they could get some gasoline. The trailer was disconnected, and the witness Jones pushed the car down to the filling station where he left the parties and the car. What became of the parties when they left the filling station the testimony does not show, and there is no testimony to show the kaffir corn in the sack in the trailer was the property of Pfeiffer.

The testimony shows that the defendant was not driving the car to which the trailer was attached, and when the trailer was disconnected from the car, the car was pushed down to the filling station by L. R. Jones, and the trailer was left on the roadside; and there is no testimony whatever to show that the defendant in this case exercised any ownership over the trailer or made any statement concerning the ownership of the trailer or the grain. The state failed to show that the trailer was taken to the defendant's place; and there is no evidence to show that the defendant had kaffir corn at his place, or that he sold any on the market. The witness P. B. Walters had known the

defendant since he moved to the place within about a mile of the Walters home, but he does not state he saw the defendant with the trailer, or in any way whatever handling the trailer. Who the party was that was driving the car at the time it was pushed to the filling station for the purpose of getting gasoline no one seems to know. The record is silent, except Clifford Smith was jointly informed against with this defendant, and in the trial of the case a demurrer was sustained and Smith released. Whether Smith was one of the parties in the car, or was driving the car, the record does not show.

The defendant moved from near Fort Cobb to the place where he was living at the time of the alleged larceny of the kaffir corn for which he was tried and convicted. The trailer that Mr. Campbell identified as being his was found on the road about 60 miles from where it is alleged it was stolen, on the highway near the place of Harry Harkey, an Indian citizen. How the trailer came there the record is silent.

The defendant offered no testimony and stood upon the record, and contends the testimony is wholly insufficient to connect him with the larceny of the kaffir corn. The witness P. B. Walters testified when he examined the old trailer it had some oats in the box of the trailer, but not a word as to whether there was any kaffir corn in the box. And the witness Jones, who saw the trailer on the road where it was disconnected from the car for the purpose of pushing the car down to the filling station to get gasoline, says he thinks he saw the trailer later on, but he does not positively identify it as one and the same trailer, and does not undertake to say that the defendant in this case was exercising any more ownership over the trailer than the other parties with him, one of whom was driving the car.

It is urged by the defendant that this testimony, being purely circumstantial, is not sufficient to overcome the presumption of innocence to which he is entitled under the law, and to sustain his conviction. The Attorney General insists that the evidence is sufficient to exclude every other reasonable hypothesis other than that of the defendant's guilt.

This court in the case of Sies v. State, 6 Okla. Cr. 142, 117 Pac. 504, in the second paragraph of the syllabus stated:

"The facts and circumstances proved must not only be consistent with and point to the guilt of the defendant, but they must be inconsistent with his innocence."

In Key v. State, 22 Okla. Cr. 284, 210 Pac. 1044, in the first paragraph of the syllabus this court said:

"Where, in a criminal case, circumstantial evidence is entirely relied upon for conviction, the facts and circumstances must not only be consistent with and point to the guilt of the defendant, but must be inconsistent with his innocence."

In Davis v. State, 18 Okla. Cr. 112, 193 Pac. 745, in the second paragraph of the syllabus the court said:

"Where the state relies wholly on circumstantial evidence to prove guilty knowledge, the circumstances relied upon, when considered together, must point clearly and conclusively to the guilt of the defendant and exclude every reasonable hypothesis other than that of guilt."

In Davis v. State, supra, in the body of the opinion the court stated:

"It is incumbent upon the state to prove every essential element of the crime by evidence beyond a reasonable doubt, and a conviction based upon circumstances which raise merely suspicions of guilt should not be allowed to

stand." Tro v. State, 27 Okla. Cr. 418, 228 Pac. 530; Adams v. State, 38 Okla. Cr. 173, 259 Pac. 665.

In Nash v. State, 8 Okla. Cr. 1, 126 Pac. 260, this court, in subdivision b of paragraph 2 of the syllabus, stated:

"Where the evidence only raises a suspicion of the guilt of the accused, it is insufficient to sustain a conviction. Suspicion is not proof; and the court should direct a verdict under such circumstances."

In Barcus v. State, 60 Okla. Cr. 351, 44 Pac. 2d 897, in the syllabus the court stated:

"When, in the trial of a criminal case, the evidence relied on to connect an accused with the crime charged is entirely circumstantial, it must do more than raise a suspicion or inference of guilt, but must point clearly and conclusively to guilt and exclude every reasonable hypothesis of innocence."

The evidence of the state tends to raise a suspicion that this defendant took part in the larceny of the property, but it is not, in the opinion of the court, sufficient to overcome the presumption of innocence which follows the defendant throughout the trial until overcome by competent proof.

The defendant in his second proposition insists that the county attorney committed reversible error in his closing argument by saying that: "The defendant had the stolen property. There is no other fact. Nobody has given you any other fact." This the state contends was in reply to the argument of the defendant's attorney.

After a careful examination of the authorities cited, without going into detail, we hold that this argument of the defendant is without merit. The demurrer of the defendant to the evidence and his motion for an instructed verdict on the ground that the evidence is insufficient to

sustain a conviction should have been sustained.

The judgment of the trial court is reversed.

DOYLE and BAREFOOT, JJ., concur.