Charles R. BROOKINS, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–312.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1979.

Gordon R. Melson, Ada, Dick Bell, Seminole, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Jim G. Wilcoxin, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Charles R. Brookins, Jr., hereinafter referred to as defendant, was charged and tried in the District Court, Seminole County, Case No. "S–CRF–76–38," for the offense of Murder in the Second Degree. He was found guilty by a jury of the lesser offense of Manslaughter in the First Degree, in violation of 21 O.S.1971, § 711. His punishment was fixed at four (4) years' imprisonment, and from said judgment and sentence an appeal has been perfected to this Court.

The defendant asserts five assignments of error, only one of which we deem necessary to discuss in this opinion. Defendant urges in his third assignment of error that the verdict of the jury was contrary to the law and evidence. The evidence adduced at the trial may be summarized as follows:

In the rainy evening of February 25, 1975, one Danny Canfield was shot to death. His body was discovered in a house on property owned by defendant's parents, the Brookins. Defendant was living in the Brookins' residence, at the request of his mother, and it was still under construction. Between 9:00 and 10:00 p. m. that evening, defendant knocked at the door of Leroy and Hazel McCanless, whose residence is located north of Seminole, Oklahoma, on Highway 99. The McCanless' residence is one/fourth mile south of the Brookins' residence. The defendant was wet, muddy and appeared to be frightened or in shock. The defendant stated that he was "in trouble," and though somebody was shot "up there." When asked if he had "done it," he replied "Yes, I think so, I don't know, maybe, I don't know, I don't think so." Defendant asked that his mother and the sheriff be called.

Sheriff's investigators were summoned and discovered decedent's body. Also found at the scene were two .32 caliber shell casings, a box for a .32 caliber Llama handgun and a large quantity of cash. It was later determined that a slug recovered from the body of decedent was .32 caliber and fired from the same weapon as a second slug found at the scene. No weapon was recovered but there was testimony that a .32 caliber Llama handgun was purchased by defendant's father several months before the date of the homicide. Four cars were observed parked at the Brookins' residence by a passerby just before 9:00 p. m. the night in question. There was testimony that defendant stated, while at the McCanless' residence, that he had been fighting with "the boys that were hurting Danny." He was further reported to have asked a witness, later at the Sheriff's Office, "Did they git [sic] Danny." A former female acquaintance of defendant testified that several months prior to the evening in question, armed, masked men had forced their way into defendant's apartment in Norman, Oklahoma, and threatened defendant before fleeing. A sheriff's deputy testified that a paraffin test administered to defendant resulted in a negative showing of the presence of gunpowder on the hands of defendant.

Although it is reasonable to assume from the evidence that the defendant might have knowledge of the commission of the homicide, there is no evidence, direct or circumstantial, that he in fact participated in the same. The strongest evidence was his statement that he "might have," which was shortly thereafter specifically denied. It is well established that where the evidence only raises a suspicion of the guilt of an accused it is insufficient to support a conviction, and that suspicion is not proof and

the trial court should direct a verdict under such circumstances. *See Davis v. State,* 18 Okl.Cr. 112, 193 P. 745 (1920); *Starr v. State,* 63 Okl.Cr. 302, 74 P.2d 1174 (1937); *Dobson v. State,* 74 Okl.Cr. 341, 126 P.2d 95 (1942); and, *Maines v. State,* 97 Okl.Cr. 386, 264 P.2d 361 (1953).

We observe in closing that this Court has previously held that the results of "paraffin" tests and "zinc oxide" tests should be inadmissible. See *Born v. State,* Okl.Cr., 397 P.2d 924 (1964), and *Fowler v. State,* Okl.Cr., 512 P.2d 238 (1973).

■ Here, as in *Born v. State,* supra, the results of the paraffin test tended to negate the presence of nitrate, at least circumstantially tending to establish that the defendant had not come into contact with fertilizer, photographic chemicals, metal finishing chemicals, plumber's supplies, costume jewelry, tobacco, tobacco juice, tobacco smoke, urine, firecrackers, cosmetics, bleaching agents or gunpowder. While in *Born,* supra, the results of a paraffin test conducted upon the body of the deceased tended to negate testimony that the weapon had been accidentally discharged by the deceased, the negative results in the instant case support the conclusion that the defendant did not fire the fatal shot which killed deceased. I would overrule *Born v. State,* supra, and *Fowler v. State,* supra, insofar as they hold inadmissible the result of such tests; I would admit such test results in accordance with the views expressed in my concurring opinion in *Born v. State,* supra.[1]

Defendant's third assignment of error is well taken. The evidence in the instant case being wholly insufficient to support the verdict of the jury, it was error for the trial court to overrule defendant's demurrer to the evidence (more properly called motion for directed verdict.) This cause is reversed and remanded with instructions to dismiss in accordance with *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

1. We note that the state presented some testimony as to other possible explanations for the negative results of the paraffin test; this was of

CORNISH, P. J., concurs in part; dissents in part.

BRETT, J., concurs.

CORNISH, Presiding Judge (concurs in part; dissents in part):

While I am in accord with the decision that the evidence in this case is insufficient to support the verdict of the jury and that the appellant's demurrer to the evidence should have been sustained, I must respectfully dissent to that part of the opinion dealing with the paraffin test.

The majority observes that this Court has previously held inadmissible the result of "paraffin" tests, citing *Born v. State,* Okl. Cr., 397 P.2d 924 (1964) and *Fowler v. State,* Okl.Cr., 512 P.2d 238 (1973), but then expressly overrules both cases and determines the results of such tests should be admitted in evidence in accordance with the concurring opinion in *Born v. State,* supra. In that concurring opinion Judge Bussey expressed the view that the Dermal Nitrate (Paraffin) Test had attained that degree of reliability as to render its results admissible in evidence, specifically relying upon quoted material from the F.B.I. Law Enforcement Bulletin, October 1935. I cannot subscribe to that view and see no reason to depart from established decisional law in this jurisdiction.

A paraffin test is made, of course, to aid officers, in determining whether a suspected person has recently fired a gun. It consists of a test for nitrate reaction on the persons' hands, nitrate being the principal ingredient of gunpowder. And, admittedly, any evidence obtained from the test is circumstantial.

Before scientific evidence is admissible, there must be proof that the reliability of the tests used has gained general acceptance and recognition in the concerned scientific community. While the "paraffin" test may someday become a helpful law enforcement tool, the State has not carried the

course proper but went to the weight and not the admissibility of the testimony.

burden of showing the test's accuracy and general scientific acceptance.

I have reviewed a number of cases from other jurisdictions, including *Brooke v. People,* 139 Colo. 388, 339 P.2d 993 (1959) and *Clarke v. State,* 218 Tenn. 259, 402 S.W.2d 863 (1966). I rely on those two cases as grounds for concluding the paraffin test should be inadmissible as unreliable and inconclusive. I am not unaware, however, that there are states holding to the contrary. See *People v. Simpson,* 5 Mich.App. 479, 146 N.W.2d 828 (1966) and *State v. Fields,* 434 S.W.2d 507 (Mo.1968).