# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 24, 2015

Plaintiff-Appellee,

v

No. 321551
Genesee Circuit Court
LC No. 13-033003-FC

ANDREW MAURICE RANDOLPH,

Defendant-Appellant.

Before: SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, discharging a firearm in a building, MCL 750.234b, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to life in prison for the murder conviction, and concurrent prison terms of 45 to 72 months for the discharge of a firearm conviction and 60 to 90 months for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant was convicted of fatally shooting Vena Fant, the mother of defendant's girlfriend, Kanisha Fant. The evidence showed that several gunshots were fired into the home that Vena shared with her partner, Collin Miller. One bullet struck Vena in the neck and killed her. The shooting occurred after defendant had been fighting with Kanisha all night and she finally called the police. There was evidence that defendant made threats against the family in the hours preceding the shooting. Defendant showed up at the scene while the police were present and was taken into custody. A gunshot residue test performed at the police station was positive. Nevertheless, the police did not have sufficient evidence to charge defendant and he was released. An agent from the Bureau of Alcohol, Tobacco, and Firearms (ATF) became involved and obtained an arrest warrant against defendant for violating a federal law against possession of ammunition by a felon. The murder weapon was found in the house where defendant was arrested. After defendant filed his claim of appeal, this Court remanded for an evidentiary hearing on defendant's claim of ineffective assistance of counsel. The trial court denied defendant's motion for a new trial.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence as it relates to his conviction of felon in possession of a firearm. A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline,* 276 Mich App 634, 642; 741 NW2d 563 (2007). In reviewing the sufficiency of the evidence in a criminal case, this Court must review the record de novo and, viewing both direct and circumstantial evidence in a light most favorable to the prosecution, determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman,* 225 Mich App 103, 111; 570 NW2d 146 (1997); *People v Hammons,* 210 Mich App 554, 556; 534 NW2d 183 (1995).

The elements of felon in possession of a firearm are (1) the defendant possessed, used, transported, sold, purchased, carried, shipped, received, or distributed a firearm in this state, (2) the defendant was convicted of a felony or a specified felony, and (3) the defendant has not regained eligibility to possess a firearm. MCL 750.224f(1) and (2).

According to the information, defendant had previously been convicted of arson, which is a specified felony. MCL 750.224f(6)(*v*) [now MCL 750.224f(10)(e)]. The elements of the offense as it related to defendant are (1) the defendant possessed or used a firearm in this state, (2) the defendant was convicted of a felony, (3) less than five years had passed since the defendant successfully completed all aspects of his sentence, and (4) the defendant's possessory rights had not been restored. MCL 750.224f(2). The instructions to M Crim JI 11.38a indicate that the jury is not to be instructed on the third and fourth elements unless "the defendant offers some evidence that more than five years has passed since completion of the sentence on the underlying offense and that his or her firearm rights have been restored[.]" Defendant did not do that here, so the only elements were (1) that defendant possessed or used a firearm in this state and (2) he was convicted of a felony.

It is clear that the parties intended to stipulate that defendant was a convicted felon, but failed to actually place the stipulation on the record. However, the ATF agent testified consistent with the apparent intended stipulation, without objection. The agent testified that during his investigation, he discovered "that Andrew Randolph was a convicted felon," which was part of the reason he was able to obtain a warrant for his arrest. Defendant does not challenge the admissibility of that testimony and it constituted sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was a convicted felon. Therefore, we reject this claim of error.

## II. ADMISSION OF EVIDENCE

Only some of defendant's evidentiary claims were preserved with an appropriate objection at trial. MRE 103(a)(1). A preserved issue regarding the admission of evidence is reviewed for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). An abuse of discretion occurs when the court selects an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203

(2003).   An unpreserved claim of evidentiary error is reviewed for plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Houston*, 261 Mich App 463, 466; 683 NW2d 192 (2004), aff'd 473 Mich 399 (2005).  An error is plain if it is "clear or obvious."  *Carines*, 460 Mich at 763.  An error affects the defendant's substantial rights if it affects the outcome of the case.  *Id.*

## A.  HEARSAY

Defendant challenges the admission of alleged hearsay statements offered by various witnesses concerning threats defendant made against family members on the day of the shooting. Defendant objected to Officer Valencia Jones's testimony regarding Devon Clayburn's statement that defendant had threatened him and his mother.  Accordingly, that hearsay claim is preserved. Defendant did not object to the remaining statements that he now challenges on appeal, leaving those claims unpreserved.

## 1.  CLAYBURN'S STATEMENT

Devon Clayburn, the son of defendant's girlfriend, testified at trial that he witnessed the final fight between his mother and defendant.  He testified that during the fight, defendant told his mother "to calm down," but did not say anything else.  Officer Jones subsequently testified that Clayburn told her "defendant had threatened him and his mother that he would kill them earlier, during an earlier altercation that day."   The prosecutor concedes that Clayburn's statement to Jones was inadmissible hearsay.   The erroneous admission of evidence is a nonconstitutional error.  *People v Whittaker*, 465 Mich 422, 426; 635 NW2d 687 (2001).  A preserved nonconstitutional error is presumed to be harmless.  The error justifies reversal if it is "more probable than not that the error was outcome determinative."  *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).   An error is not outcome determinative unless it undermined the reliability of the verdict in light of the untainted evidence.  *Id*. at 495; *Whittaker*, 465 Mich at 427.

We are satisfied that the admission of Clayburn's statement was harmless.  Apart from Clayburn's statement, there was evidence that defendant had a history of making threats.  Miller in particular testified that defendant bragged about being a killer and had once threatened to "do" Miller.  There was also other evidence that defendant had made threats that day.  Miller testified that he received a call from defendant, who threatened to do something in response to the fight he had with Vena's daughter and defendant's recorded message containing a threat of some sort was also admitted.  That defendant made the threatening phone calls shortly before Vena and Miller's house was fired upon was circumstantial evidence that defendant was the shooter, as was the evidence that the murder weapon was found in the house where defendant was staying. Moreover, Clayburn's hearsay statement was probative of a premeditated intent to kill, *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), but the jury acquitted defendant of that charge and convicted him only of second-degree murder.  In light of the other evidence of defendant's threats that day, and the jury's acquittal of defendant on the first-degree murder charge, it does not appear more probable than not that Clayburn's hearsay statement was outcome determinative.

## 2. VENA FANT'S STATEMENTS

Linda Wilkerson, Miller's sister, lived with Vena Fant and Miller. She arrived at the home less than an hour before the shooting. Vena was visiting with a friend. After Vena's friend left, Vena told Wilkerson that defendant had "been calling all day threaten' [sic] to kill the family, especially Lo and Vontay." The prosecutor admits that Vena's statement to Wilkerson was hearsay, but the parties dispute whether the evidence was admissible as an excited utterance under MRE 803(2).

To be admissible as an excited utterance, three conditions must be met: (1) the statement arises out of a startling event, (2) the statement is made before there has been time to contrive and misrepresent, and (3) the statement relates to the circumstances of the startling event. *People v Straight,* 430 Mich 418, 424; 424 NW2d 257 (1988). The second condition considers whether the declarant "was still under the influence of an overwhelming emotional condition" at the time the statement was made. *Id.* at 425. Thus, a statement may meet the second condition even if it is not made immediately following the startling event. On the other hand, a statement will not meet the second condition if it is made "while under control, even though made contemporaneously" with the event. *Id.* at 424. The focus is on the lack of capacity to fabricate, not the lack of time to fabricate. *People v Smith,* 456 Mich 543, 551; 581 NW2d 654 (1998).

A person's receipt of a threat against that person's life or family member can qualify as a startling event. Vena's statement related to that event. While there is some evidence in the record to suggest that Vena was not overcome by the stress or excitement caused by the threat, that issue was not fully explored due to defendant's failure to object. Therefore, we cannot conclude that any error is clear or obvious. Even assuming that a plain error occurred, it did not affect defendant's substantial rights. Similar to Clayburn's statement to Officer Jones, Vena Fant's statement to Wilkerson was evidence that the subsequent shooting was done with a premeditated intent to kill, but defendant was acquitted of first-degree murder and convicted of second-degree murder, which was supported by other evidence unrelated to this hearsay statement.

Wilkerson also testified that after Vena told her about defendant's threats, she was going to call Lo, her son, to warn him, but then hesitated. She said that after "I thought about it, and I thought about Vena the way she said it," she sought Vena's assurance that calling Lo was the right thing to do. The prosecutor interrupted Wilkerson to ask, "How was it that Vena said it?" Wilkerson answered, "She said, she's like, well, we better watch out. He said he's goin' get us, we better be on the alert. It was more or less like that type of – we better, we better watch out 'cause he said he's goin' get us, he's goin' kill us, he's goin' kill us." Defendant contends that this was hearsay and should have been excluded. However, it is unclear whether Wilkerson gave an unresponsive answer by elaborating on what Vena had said, or whether Wilkerson answered the question by using tone and expression to demonstrate the manner in which Vena had related her conversation with defendant. Accordingly, defendant has not shown a plain error with respect to this unpreserved issue.

### 3. JONES'S TESTIMONY

In the course of her testimony, Jones was asked why she investigated Vena and Miller's answering machine. She replied, "The family had stated that the defendant had left several threatening messages on their answering machine." Defendant contends that this too was hearsay and should have been excluded. We disagree. Viewed in context, it is clear that this testimony was not offered to prove the truth of the matter asserted, i.e., to prove that defendant had left threatening messages, but was offered as part of the foundation for the admission of a threatening message recovered from the answering machine. Thus, the statement was not hearsay, MRE 801(c). Therefore, defendant has not shown a plain error with respect to this unpreserved issue.

### B. AMMUNITION AND GUNS

During a lull in the fight with his girlfriend, defendant packed up his clothes in preparation for moving out. During the final altercation, defendant's girlfriend tried to get a phone to call the police. Defendant ran off, leaving his belongings behind, and never returned. In the meantime, the police responded to the scene and called Vena Fant and Miller, who went over to attend to Vena's daughter. Vena and Miller collected defendant's belongings and delivered them to defendant's father, Alphonso Taylor. Officers later went to Taylor's house and obtained his consent to search. Among defendant's belongings, the police found several rounds of .357-caliber ammunition. That ammunition led to the issuance of an arrest warrant on a federal charge and, after defendant was arrested, the murder weapon was discovered.

Defendant raises different challenges to this evidence. First, he contends that Taylor did not have authority to consent to the search of his belongings, and therefore, the ammunition was obtained in violation of his Fourth Amendment rights and should have been suppressed. Defendant further argues that because that search eventually led to the discovery of the murder weapon, that should have been suppressed as well. Because defendant did not challenge the validity of the seizure of this evidence in a motion to suppress in the trial court, or object during trial to the testimony relating to the discovery and seizure of the items, this issue has not been preserved for appeal. *People v Gentner, Inc*, 262 Mich App 363, 368-369; 686 NW2d 752 (2004). Accordingly, our review is limited to plain error affecting defendant's substantial rights. *Carines,* 460 Mich at 763-764.

Because the available record is insufficient to establish a Fourth Amendment violation, defendant has not shown plain error. See *People v Marcus Davis*, 250 Mich App 357, 364; 649 NW2d 94 (2002). While the record presented indicates that Taylor did not have actual authority to consent to a search of defendant's belongings, see *People v Brown,* 279 Mich App 116, 131; 755 NW2d 664 (2008), and did not, in light of his statements to the police, have apparent authority to consent to the search, see, e.g., *United States v Waller*, 426 F3d 838, 845-849 (CA 6, 2005), *United States v Basinski*, 226 F3d 829, 834-835 (CA 7, 2000), and *United States v Fultz*, 146 F3d 1102, 1105-1106 (CA 9, 1998), the fact that defendant left his belongings behind when he fled and never returned suggested that he abandoned his belongings and thus lacks standing to raise this issue. See *People v Henry*, 477 Mich 1123; 730 NW2d 248 (2007), and *People v Taylor*, 253 Mich App 399, 406; 655 NW2d 291 (2002). While it is possible that defendant was responsible for having his things transferred to Taylor, such that he may not have abandoned

them, the available record lacks sufficient information to make that determination. See *Basinski*, 226 F3d at 837-838. Further, even assuming that the ammunition was found as the result of an illegal search, the record does not contain sufficient information to determine whether the gun was likewise subject to suppression. See *People v Jordan*, 187 Mich App 582, 588; 468 NW2d 294 (1991). Accordingly, defendant has not met his burden of establishing a plain error affecting his substantial rights.

Defendant also argues that even if the evidence regarding the ammunition was not subject to suppression, it was inadmissible other-acts evidence under MRE 404(b). We disagree. MRE 404(b)(1) precludes the admission "of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (Docket No. 149798). For evidence to be admissible under the rule, it must be offered for some other purpose, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1). Defendant's possession of ammunition was not evidence of the conduct at issue in this case because it did not directly prove the charged offenses, nor was it inextricably linked to those offenses, given that the ammunition was of a different caliber than that fired by the murder weapon and that recovered at the scene. Thus, it qualifies as other-acts evidence under MRE 404(b)(1). *Jackson*, 498 Mich at 276. While the evidence created "the risk of a character-to-conduct inference," it was not relevant solely for that purpose. Rather, it was logically relevant to a material fact in this case. *Id*. at 277. Evidence that defendant possessed ammunition explained why a federal warrant was issued for his arrest. The fact that defendant was arrested pursuant to a federal arrest warrant on another charge explained why defendant had been arrested again despite the absence of any new evidence against him. Finally, the circumstances of defendant's arrest explained how the murder weapon was located and provided a connection between defendant and that weapon. Although the prosecutor failed to provide notice of its intent to offer the evidence as required by MRE 404(b)(2), it is apparent from the record that defense counsel had notice of the evidence and there has been no showing that defendant was so prejudiced by the error as to warrant reversal. *Jackson*, 498 Mich at 278-279; *People v Dobek*, 274 Mich App 58, 86-87; 732 NW2d 546 (2007).

## C. GUNSHOT RESIDUE TEST

Defendant next argues that the trial court erred in admitting evidence regarding the gunshot residue test. This issue has only been partially preserved for appeal because defendant objected to the evidence at trial on limited grounds. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Defendant has preserved only his claims that Officer Jones was not qualified to render an expert opinion, and that Officer Bradley Ross's testimony was based on hearsay. His remaining challenges to Jones's and Ross's testimony are unpreserved.

Defendant first argues that the evidence was not admissible because the dermal nitrate test is unreliable and based on "junk science." The reliability of scientific evidence is a requirement for the admission of testimony by expert witnesses. MRE 702. Under that rule, a trial court may admit expert testimony regarding scientific, technical, or other specialized

knowledge only if it determines, "pursuant to MRE 702, that expert testimony meets that rule's standard of reliability" so as to prevent the introduction of "junk science." *Gilbert v DaimlerChrysler Corp,* 470 Mich 749, 782; 685 NW2d 391 (2004). In this case, an expert was not called to offer a scientific opinion regarding the gunshot residue test. Instead, Officers Jones and Ross testified to observing the test being administered, and to seeing the skin residue sample cause a reaction in the chemical test packet. Moreover, considering that there are no published decisions in Michigan precluding such testimony, and that courts from other jurisdictions have reached different results, compare *State v Crowder*, 285 NC 42, 54, 46; 203 SE2d 38 (1974), vacated in part on other grounds 428 US 903; 96 S Ct 3205; 49 L Ed 2d 1207 (1976), with *Brookins v State*, 602 P2d 215, 217 (Okla Crim App, 1979), defendant has not met his burden of demonstrating that the admission of such testimony constitutes plain error.

In a related claim, defendant argues that the evidence was inadmissible under MRE 701 and MRE 702. The crux of defendant's argument is that Jones and Ross could not testify about the test unless they were qualified as experts, and they could not have been qualified as experts because the test was not reliable. The fact remains that the officers were not qualified as experts and, as discussed previously, their testimony about the test is not admissible. A witness's testimony must be based on personal knowledge. MRE 602. Under MRE 701, a lay witness can offer testimony in the form of opinions or inferences if they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Both officers testified to seeing someone else administer the test and to seeing a chemical reaction. Those were simple facts based on the witnesses' personal knowledge and did not constitute an opinion or inference. Jones further testified that the reaction is an indication of "whether or not a person has gun powder residue on their hands." However, it is not clear whether the inference that defendant had gunpowder residue on his hands was based on Jones's personal knowledge and perceptions, or was based on hearsay.

That brings us to defendant's next claim, which is that the officers' testimony that there was a reaction was based on hearsay, and that the admission of their hearsay testimony violated defendant's right of confrontation. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial . . . , offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless the rules of evidence so provide. MRE 802. In addition, the introduction of hearsay evidence that is testimonial in nature violates a defendant's right of confrontation "unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012).

The fact that there was a reaction was not hearsay. Both officers testified to seeing the reaction themselves. Further, the trial court sustained a hearsay objection to part of Ross's testimony. However, it appears that Officer Jones relied on information from another person in testifying to the significance of the reaction. She testified that she was told that the chemical would turn blue if nitrates were present, and implied that she was told that the reaction is an indication "whether or not a person has gun powder residue on their hands." This arguably constitutes hearsay in that it related to a statement from another person and was offered to prove the truth of the matter asserted, i.e., that a blue reaction means nitrates or gunshot residue are present. It thus appears that Jones's testimony regarding the test result was inadmissible on hearsay grounds, as was Ross's testimony. However, the record does not support a conclusion

that this involved a confrontation issue. As noted, the Confrontation Clause concerns hearsay statements that are testimonial in nature. *Nunley*, 491 Mich at 697-698. A statement is testimonial if its primary purpose is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). In this case, the record does not show who provided the information to Jones or under what circumstances, so we cannot conclude that the statement was testimonial in nature.

Defendant also argues that the evidence was inadmissible under MRE 403, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The fact that evidence is damaging does not mean it constitutes "unfair prejudice" because "'[a]ny relevant testimony will be damaging to some extent." *Sclafani v Peter S Cusimano, Inc*, 130 Mich App 728, 735-736; 344 NW2d 347 (1983). Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Rather, "unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Goree,* 132 Mich App 693, 702-703; 349 NW2d 220 (1984). Evidence is unfairly prejudicial if there is a danger that marginally probative evidence will be given undue weight by the jury, *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001), when it would lead the jury to decide the case on an improper basis such as emotion, *People v Meadows,* 175 Mich App 355, 361; 437 NW2d 405 (1989), or when it would be inequitable to allow the use of the evidence, *People v Blackston,* 481 Mich 451, 462; 751 NW2d 408 (2008).

To the extent that the evidence was admissible, it was relevant to defendant's identity as the shooter because it provided a basis for concluding that he had recently fired a gun. The evidence was not unfairly prejudicial because it did not inject a matter extraneous to the issues at trial. Moreover, there was little danger that the jury would give it undue weight because the parties agreed that it was not particularly significant. In his closing argument, the prosecutor indicated that because Jones was not an expert and could not "vouch for the test," "it's not something to give a whole lot of weight to[.]" In the same vein, defense counsel argued that the test was "stupid," it "doesn't hold water," and the presentation of the evidence was a waste of time.

Assuming that the gunshot residue evidence was not admissible for one or more of the reasons advanced by defendant, defendant has not shown either that the evidence affected his substantial rights or that it "is more probable than not that the error was outcome determinative." The gunshot residue evidence appears to have generated more questions than it answered. Defense counsel was successful in eliciting from both Jones and Ross that neither had been trained in administering gunshot residue tests. Both witnesses also testified that the test they observed was only a "preliminary test," and neither had knowledge of any further testing. In his closing argument, defense counsel seized upon the facts that the person who actually administered the test was never called as a witness, that the test that was administered to defendant was only a preliminary test, that defendant was released from custody after the test was performed, and that no further testing was conducted. Indeed, as previously indicated, the prosecutor conceded that this evidence was "not something to give a whole lot of weight to[.]" Moreover, other evidence was presented to link defendant to the shooting. Defendant was angry

-8-

over the fight he had with Kanisha and the fact that she had reported the matter to the police. Defendant, who had bragged of being a killer and claimed to own a nine millimeter gun, made threatening phone calls shortly before Vena and Miller's house was shot up by a nine millimeter gun, which was later found in the house where defendant was staying. Accordingly, we conclude that any error arising from the challenged gunshot residue testimony was harmless.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective, primarily because he did not object to or seek to exclude all of the evidence defendant argues was not admissible. Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. The trial court's factual findings are reviewed for clear error, but this Court determines de novo whether the facts properly found by the trial court establish ineffective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

The general rule is that effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand),* 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish a claim of ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Defendant must also show that "the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

The decision whether to seek exclusion of evidence is a matter of trial strategy. Cf. *People v Traylor,* 245 Mich App 460, 463; 628 NW2d 120 (2001) (the decision whether to file pretrial motions is a matter of trial strategy). The failure to object to evidence can constitute ineffective assistance of counsel if the evidence is inadmissible and its introduction is so prejudicial that it could have affected the outcome of the case. *People v Ullah*, 216 Mich App 669, 685-686; 550 NW2d 568 (1996). Counsel's decisions whether to retain and call an expert witness are also matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). The failure to call a witness can constitute ineffective assistance of counsel "if the failure deprives defendant of a substantial defense." *People v Julian,* 171 Mich App 153, 159; 429 NW2d 615 (1988).

Counsel's trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Therefore, counsel will still be found ineffective despite a strategic decision if the strategy employed was not a sound or reasonable one. *People v Dalessandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). A strategy is sound when it is based on a thorough investigation of the law and facts of a case "developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). Counsel must make a reasonable investigation of the law and facts of the case or "make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

In this case, defendant has failed to establish plain error in the admission of alleged hearsay statements regarding the threats he made and thus his claim of ineffective assistance of counsel must fail. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike,* 228 Mich App 178, 182; 577 NW2d 903 (1998). Even if we were to accept defendant's claim that Vena's first statement to Wilkerson was inadmissible hearsay, defendant cannot show that he was prejudiced by counsel's failure to object for the reasons discussed earlier. Similarly, defendant has failed to establish plain error in the admission of the evidence regarding the ammunition, defendant's arrest on the federal warrant, and the guns, and thus his related ineffective assistance of counsel claims must also fail. *Id.*

With respect to the gunshot residue test evidence, defendant seems to argue that counsel was ineffective (1) because evidence of the gunshot residue test result was not admissible and he failed to object to its introduction, or (2) because evidence of the gunshot residue test result was admissible, but counsel did not move to exclude it or present evidence to counter it. We note that counsel did object to the evidence, albeit not on the grounds raised by defendant. Assuming counsel could have prevailed by objecting on another basis, we nevertheless agree with the trial court that it was part of counsel's trial strategy not to exclude the evidence because defendant wanted the jury to know that he had been released despite the positive test result, which indicated that the result was not significant. Although counsel did not pursue this strategy in the most logical and straightforward manner, he nonetheless elicited testimony to support it and argued it to the jury.

To the extent that counsel adopted this strategy primarily because that is what defendant wanted and thus did not investigate whether the residue test evidence could be excluded, that was not objectively reasonable because counsel is not required "to press nonfrivolous points requested by the client" simply because the client wants him to. Rather, it is counsel's obligation to examine the record, research the law, and use his professional judgment to determine the most promising issues and arguments to raise. *Jones v Barnes*, 463 US 745, 751-752; 103 S Ct 3308; 77 L Ed 2d 987 (1983). However, there is no reasonable probability that defendant was prejudiced by any deficiency in this regard.

As discussed previously, it is arguable that Jones's testimony regarding the result of the test was inadmissible hearsay. Thus, had counsel pressed a hearsay objection to Jones's testimony, the prosecutor may have simply called in an expert to testify. Counsel could have then called his own expert witness to discredit the evidence by showing that nitrates are present in substances other than gunpowder, but there was no evidence that defendant had recently handled other substances that contained nitrates from which to infer that something other than gunpowder led to the positive test result. Further, the competing experts could not have said that a positive test result meant that defendant did fire a gun, because the test only detects nitrates, not gunpowder, nor could they have said that the nitrates were or were not from gunpowder. Thus, the evidence would have been suggestive, not conclusive. Finally, even the prosecutor conceded that the test result was not particularly significant and "it's not something to give a whole lot of weight to[.]" Therefore, it is not reasonably probable that seeking to exclude the evidence or presenting an expert to counter it would have been any more successful than the avenue counsel chose.

## IV. SANCTIONS

As noted, defendant filed a motion for a new trial in the trial court. In contravention of MCR 2.119(A)(2), defendant's motion and brief exceeded 20 pages. Although defendant sought leave from the court to exceed the 20-page limit, that request was ultimately denied. Defendant then filed an amended brief of 20 pages (which still violated the court rule) and supplemented that brief with his appellate brief, attached as an exhibit. The trial court imposed a fine "as a sanction for filing a non-conforming pleading." While defendant seeks relief from this order, it is not properly before this Court. Although a claim of appeal from a final order "includes all prior interlocutory orders, it does not bring before the reviewing court any subsequent orders." *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989) (citations omitted). Thus, this issue is not properly before us.

Affirmed.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

-11-